DAVIS & COMPANY *vs.* THE MAYOR AND COUNCIL OF MACON.

1. The city of Macon, having power by charter to tax all persons exercising within the city any profession, trade or calling of any nature whatsoever, may levy and collect a license tax upon every firm retailing fresh or butcher's meat in the city, whether from stalls, stores, or by peddling the same on the streets. An exception in the ordinance exempting farmers selling their own produce, does not make the tax invalid as to others. The tax is a business tax, and a farmer's business is production, not trade, and the sale by himself of what he rears or produces is merely occasional and incidental.

2. The city may also tax a butcher or retailer of meats, upon the wagon or wagons used in his business, and this likewise is a part of the business tax. The validity of this specific tax is not impaired by exempting the wagons used in delivering milk from dairies on country farms, since the city may tax one class of business and exempt another, or may tax different occupations and their instrumentalities unequally.

3. That all property taxes have been paid, is no obstacle to the imposition and collection of a business tax, measured in part or in whole by the employment and use of vehicles already taxed *ad valorem* as property.

4. The fact that the meat in which a retailer deals was produced in Georgia, and was never in the city until carried in for delivery from the wagon to customers at their doors, will not hinder the city from taxing the retailer on his business.

5. A butcher whose residence, shop and slaughter-pen are all out of the city limits, and who purchases cattle outside, and slaughters them outside, and has no place of business inside, but who habitually hauls inside a part of his fresh meat, and from his wagon delivers it to regular customers at their doors in the city, making no charge, and receiving no compensation for the delivery, is within the ordinance referred to above, both as to license tax and the specific tax upon his wagon ; and the ordinance is none the less obligatory upon him than upon residents of the city who retail fresh or butcher's meat therein, and use wagons for delivering the same to customers.

Injunction.   Municipal corporations.   Tax.   Constitutional law.   License.   Before Judge SIMMONS.   Bibb County. At Chambers.   September 16, 1879.

Reported in the opinion.

JOHN L. HARDEMAN, for plaintiffs in error.

W. B. HILL, for defendants.

BLECKLEY, Justice.

In July, 1879, the city corporation of Macon issued a *fi. fa.* against H. G. Davis & Co. for fifty dollars, "it being license city tax for retailing fresh and butcher's meats in the city, and peddling the same on the streets, for the year 1879." Also a *fi. fa.* for twenty-five dollars, "it being license city tax for running a one-horse wagon for the year 1879." Both these *fi. fas.* were levied by the city marshal upon certain personal property of Davis & Co. An ordinance of the city, passed June 12th, 1879, declared that the various amounts specified therein should be levied and collected as license and business taxes for the year 1879; among the numerous specifications in the ordinance were the following: "Each person or firm (farmers selling their own produce excepted) retailing fresh or butcher's meat in the city, whether from stalls, stores, or by peddling the same on the streets, shall pay a license of $50.00. . . . "For each and every wagon used by butchers and bakers in their business, and wagons used by brewers and manufacturers of soda water, or for the delivery of oil, milk or any other article (except wagons delivering milk from dairies on country farms), and package delivery wagons, where such wagons are used for hauling in the city, and drawn by one horse, shall pay $25.00

By charter, the city of Macon has power to tax property, real and personal, within the city, at a rate not exceeding (for all purposes) one and a half per cent. *ad valorem*, and also "power to levy and collect a tax upon . . . . all persons exercising within the city any profession, trade or calling, or business of any nature whatever." Acts of 1871-2, pp. 120, 121. The constitution of 1877 (art. vii, section 2) declares "all taxation shall be uniform upon the same class of subjects, and *ad valorem* on all property subject to be taxed, within the territorial limits of the authority

levying the tax, and shall be levied and collected under general laws. . . . The general assembly may, by law, exempt from taxation (certain specified property). No poll-tax shall be levied except for educational purposes, and such tax shall not exceed one dollar annually, upon each poll. All laws exempting property from taxation, other than the property herein enumerated, shall be void." The Code, in section 1605, provides that "No municipal corporation of this state shall levy or assess a tax on cotton or the sales thereof, nor shall any such corporation levy or asses a tax on any agricultural products raised in this state, or the sales thereof (other than cotton), until after the expiration of three months from the time of their introduction into said corporations."

On the first of August, 1879, H. G. Davis & Co. filed their bill against the corporation of Macon, praying for an injunction against the collection of the two executions above described, and that said corporation and its officers be restrained from proceeding further at law touching the matters in questions. At the hearing of the order to show cause, the injunction was refused, and that is the alleged error.

The charges of the bill make the following case: The complainants do not reside within the corporate limits of the city; they carry on the business of butchers, but have no slaughter-pen, stall or place of business within the city; their slaughter-pen is about one mile outside of the city limits, and their shop is in Vineville; a few of their regular city customers reside in the city of Macon, and the complainants deliver to these, at their doors, fresh meats, using for this purpose a one-horse wagon, which wagon is the property of complainants; that for such delivery they charge nothing, nor are they paid anything; that they do not retail fresh or butcher's meat in the city from a stall or store, nor peddle the same upon the streets; and that the cattle they slaughter are raised in Georgia, not bought in the city, but bought from farmers in Bibb and adjacent

counties, brought to the complainants' pens outside of the city limits, and there slaughtered, and the interval between the purchase of the cattle and the sale of the meats is never longer than two weeks; and that the city has no public market. The bill proceeds to allege that the executions were issued and levied; complains that the levies were excessive, etc., and then attacks the validity of the ordinance for the following reasons: That the tax is not uniform upon the class taxed; that the city has no authority to license delivery wagons of non-residents used for their own purposes; that the city has no authority to tax agricultural products raised in Georgia, or the sale thereof, until after the expiration of three months from their introduction into the city; that by exempting farmers selling their own produce, the ordinance fails in uniformity; that complainants have paid all state and county taxes due on their property; that the city does the greater part of the work on the streets with the Bibb county chain-gang, to the support of which the city does not contribute. The bill also makes the point that the complainants are not within the provisions of the ordinance, because they are non-residents of the city, have no place of business within it, and do not retail meats within it from stalls or stores, or by peddling on the streets.

1. The power of the city to impose the so-called license tax is denied. But the authority to levy and collect a tax upon all persons exercising within the city any profession, trade or calling or business of any nature whatever, is expressly granted by the charter. This power is surely broad enough to reach the complainants if they carry on, within the city, the business of retailing fresh or butcher's meat. Why not? 59 *Ga.*, 188; 60 *Ib.*, 133.

The ordinance is further attacked as invalid because it has an exception in it exempting from its operation farmers selling their own produce. The exception would probably have been implied had it not been expressed, for the tax imposed is a business tax, a tax on avocation or calling. The business of a farmer is production, not trade, and the

sale directly by himself of what he rears or produces is
merely occasional or incidental.   No doubt very considera-
ble restrictions might be imposed upon farmers as to the
manner of conducting their trade; but while the public
authority can restrict them in that respect, it is not obliged
to do so as a condition of taxing other persons on their
business or avocations.   We need not and will not say that
for the purpose of upholding a general meat-market, or a
system of meat-markets, in a city, farmers could not be
prohibited from retailing or peddling meat of their own
raising within certain hours, and perhaps they could be
confined to certain localities within the corporate limits.
We have not thought it necessary to advert to authority on
such questions as these, or even to address our minds to
them with any earnestness, for it is manifest that, constru-
ing the ordinance in the light of the charter, the tax with
which we are dealing is a business tax ; and the disposition
of meat as the immediate sequel to rearing animals upon a
farm is obviously no separate calling from that of farming.
It is but the primary link of connection between the pro-
ducer and the consumer—a link fastened to the farmer's vo-
cation, and with which the commercial chain begins if other
links are added before the consumer is reached, and which
constitutes the entire process where consumption is by the
first purchaser.   The constitutional requirement that "all
taxation shall be uniform upon the same class of subjects,"
is not infringed by the ordinance in the provision which we
are considering.   The producer whose trade is incident to
production, and the middle-man whose trade is intermediary
between the producer and the consumer, belong not to the
same class, but to different classes of subjects in a scheme
of taxation.   At least, the difference is wide enough to
justify, if not to compel, its recognition in shaping the
scheme.

2. The tax of the complainants upon the wagon which
they use in their business is attacked because the ordinance
exempts wagons used in delivering milk from dairies on

country farms; this discrimination also is urged as breaking up the uniformity which the constitution requires as to the same subjects of taxation. It is manifest that this wagon tax is a part of the business tax, and nothing can be plainer than that the delivery of milk from a farm-dairy is a different business from that of retailing butcher's or fresh meat. In adjusting a business tax, those who are engaged in the same business are to be taxed alike; but there is nothing in the constitution to prevent the different occupations and their instrumentalities from being taxed unequally, nor to prevent the taxation of one class of business and the exemption of another. 60 *Ga.*, 597.

3. It is insisted, further, that by the tax upon the wagon, the *ad valorem* principle of the constitution is violated. This objection proceeds upon the theory that the wagon is mere property, and subject only to state and county taxes, the owners not residing within the corporate limits of Macon, which taxes have been duly assessed and paid. The complainants contend that having paid all taxes on the value of the wagon as property with which they are chargeable, they cannot be required to pay an additional specific tax to the city upon the same property. But as already stated, the tax now in question is not a property tax, but a business tax; the wagon is treated as an instrument used in carrying on the business of the complainants within the city, and it has been ruled, and no doubt rightly ruled, that the number and kind of vehicles may be regarded in measuring a tax of this description. 62 *Ga.*, 645. That the complainants are in no default to the state and county in respect to taxes upon the value of the wagon as property, is no protection to them against the business tax now demanded. Frommer *vs.* Richmond, 31 Grattan, 646; S. C., 8 Reporter, 538. The suggestion in the bill that the streets of the city are not kept in repair at municipal expense, but by the labor of the county convicts, needs no discussion; for it does not appear that the city has been absolved from the legal obligation of keeping its streets in order. By

what means, as matter of fact, the obligation is complied with for the present, seems quite immaterial. That the complainants do not burden their customers with any charge for deliveries, cannot affect the question of taxation.

4. The next point relates to the effect of section 1605 of the Code upon both of the assessments we are considering. That section inhibits taxation by any municipal corporation on agricultural products raised in this state, or on the sales thereof, until after the expiration of three months from their introduction into the corporation. If fresh or butcher's meat can be classed as an agricultural product, without something in the context of the statute to show that the phrase, agricultural products, was, in this particular instance, used in a sense animal as well as in a sense vegetable, there ought to be evidence that the meat in question was produced in the pursuit or by the fruits of agriculture. Cattle, so far as we know, may be Georgia raised and belong to farmers, and yet never have consumed a pound of food derived from agriculture. In the middle and lower parts of the state, herdsmen or stock-raisers are perhaps indebted to natural pasturage alone for the subsistence and growth of the animals which they rear, and which afterwards find their way to market. We are not informed by the record that the agricultural industry of the state produced, or contributed to the production of the meats in which the complainants dealt. The cattle were bought from farmers, but there is no express allegation that they were "agricultural products." And when it is thought of closely, would it not be rather an unusual application of the phrase "agricultural products" to make it comprehend beef cattle? In ordinary usage, is not that phrase confined to the yield of the soil, as corn, wheat, rye, oats, hay, etc., in its primary form? When there has been conversion of the fruits of the soil into animal tissues, are we still to apply the phrase? And suppose we are to disregard the change in its first stage, and call a cow or a steer agricultural product, must we carry the name forward to the steak or roast which the butcher sells us from

the slaughtered animal? If cattle fall under the denomination, so do hogs; and if beef, so does bacon. Passing from this verbal difficulty, and turning to an argument of altogether another class, it is to be noted that the tax we are considering is not laid upon the beef sold, nor upon the sale thereof, nor is the amount of the tax measured by the amount of sales. The tax is upon business and upon the vehicle used therein, and to conduct such business by such means has no necessary relation to "agricultural products raised in this state," granting that fresh beef is to be classed as an agricultural product. It would be possible to conduct a like business by like means with beef raised elsewhere; and if the complainants chose to deal in Georgia raised beef, *as a business*, are they to be therefore exempted from all business tax? Is a merchant or factor to pay no business tax because he sells Georgia produce, rather than Alabama or Tennessee produce? And is the taxability or non-taxability of a butcher to depend upon the state in which the animals he slaughters happened to be reared? Granting that the discrimination could be made (and that it could is by no means certain), *must* it be made? We rather think not. Could a lawyer escape a professional tax by confining his practice to cases in which non-taxable property, such as that used for worship or burial, public charity, colleges, incorporated academies, etc., was involved or in controversy? It would be strange if he could.

5. The ordinance being good, are the complainants within it? Their residence, their shop and their slaughter-pen are all out of the city limits. They purchase and slaughter outside, and have no place of business inside, but they habitually haul inside a part of their fresh meat, and from their wagon deliver to regular customers at the doors of the latter, within the city; they make no charge for the delivery, but it is evident that they distribute the meat from their wagon in retail parcels. Where they cut and weigh to suit parcels to the demand of customers, does not appear. We are to suppose they do it in the wagon, as they do not aver

to the contrary. The pleadings and evidence are equally silent as to where orders are taken, and where payments are made, and whether made on each and every delivery, or by the week, month or year. There is no suggestion that the meat is not paid for, though the hauling is free. We cannot see but that the wagon is made a kind of portable shop, and moved daily to the door of each customer. Although the complainants allege that they do not peddle meats, they seem to rest the allegation on the fact that they confine their dealings to regular customers; but where a dealer supplies constantly recurring wants, he may be a peddler, however regular and uniform the demand may be for his wares. There is a striking degree of regularity in the patronage of almost every business. When I was a solicitor-general, nothing in my experience struck me with more force than that, term after term, in each county of my circuit, I met substantially the same body of people who had connection with the criminal docket—the same array of prosecutors, defendants and witnesses. Here and there a new man would come in, and occasionally a prosecu*tor* would become a prosecu*ted*, and *vice versa*, and the witness class would sometimes disintegrate and mix up with the other two; but my *intimates* were, and continued to be for four years, very much the same individuals. They were my *regular customers.* It is not improbable that every peddler who follows the road has his regular customers, and that the regularity with which they buy induces him to return again and again to the same neighborhood, unless he has nomadic tastes which solicit him to disregard all routine. The complainants vouchsafe to us no explanation of their method of dealing with their customers, save that they deliver at their doors, and make no charge for delivery. Making, as we are bound to do, every reasonable presumption against them where they might explain and do not, we hold that they are within the ordinance, both as to the license tax and the specific tax upon the wagon, and that the ordinance is no less obligatory upon them than upon

residents of the city who retail fresh or butcher's meat therein, and use a wagon or wagons for making delivery to customers.

Judgment affirmed.