SINGER MANUF'G Co. *v.* WRIGHT, Compt. Gen.[1]

*(Circuit Court, N. D. Georgia. May 18, 1887.)*

1. CONSTITUTIONAL LAW—OCCUPATION TAX—CORPORATIONS.
   Where, by a general tax act of a state, a specific tax is assessed upon "every sewing-machine company selling or dealing in sewing-machines, by itself or its agents, in this state," such act extends to and embraces all such companies, whether corporations, joint-stock companies, or partnerships, domestic or foreign, and is not violative of that provision of the federal constitution which declares that "the citizens of each state are entitled to all privileges and immunities of citizens in the several states." That in point of fact no domestic companies are at the time engaged in such business within the state is immaterial, and cannot vary the rule.[2]

2. SAME—OCCUPATION TAX—INTERSTATE COMMERCE.
   Such companies are proper subjects of state taxation, and the assessment of a specific tax on their business within the state is not a regulation of commerce among the states.[2]

3. SAME—OCCUPATION TAX—CORPORATIONS.
   A corporation regularly admitted to transact business within a state is a "person within the jurisdiction" of that state, and as such is entitled to the "equal protection of the laws;" but this clause of the fourteenth amendment does not forbid a proper classification of corporations for purposes of state taxation.

---

[1] Reported by W. A. Wimbish, Esq., of the Atlanta bar.

[2] Respecting interstate commerce in general, see Pearson v. Distillery Co., (Iowa,) 34 N. W. Rep. 1, and note.

4. TAXATION—CLASSIFICATION OF SUBJECTS—UNIFORMITY.

The legislature of a state is competent to select and classify the subjects of taxation within constitutional limitations; and the fact that one class of business is taxed and another is not, or that different classes are taxed unequally, does not affect the validity and uniformity of the tax.[1]

5. SAME—OCCUPATION TAX—UNIFORMITY.

The provision of the constitution of Georgia that "all taxation shall be uniform upon the same class of subjects" is not violated by a statute imposing a specific tax on the business of sewing-machine companies and wholesale dealers in sewing-machines, regarded for the purpose of the tax as constituting one class, from which tax retail dealers, regarded as constituting another class, are exempted; it being the purpose of the law to tax the business of manufacturers selling their machines within the state, whether at wholesale or retail, as a different class from ordinary retail dealers.[1]

In Equity. Bill for injunction.

*George Hillyer* and *Henry Hillyer*, for complainant.

All taxation must be uniform upon the same class of subjects. Const. Ga. art. 7, § 2. Complainant alone of the retail dealers in the state falling under the description "companies," is taxed under the statute. Classification of subjects must be in respect of the *business* taxed, and not of the persons engaged therein. *Davis* v. *Macon*, 64 Ga. 128; *Johnston* v. *Macon*, 62 Ga. 645; *Cutliff* v. *Albany*, 60 Ga. 597; *Smith* v. *Goldsmith*, 63 Ga. 736; *Burr* v. *Atlanta*, 64 Ga. 225. And such tax must extend to all engaged in the particular business taxed. Cooley, Tax'n, 169, 170, 214, 215; *Gould* v. *Atlanta*, 55 Ga. 683; *Webber* v. *Virginia*, 103 U. S. 344; *Guy* v. *Baltimore*, 100 U. S. 434; *Ward* v. *Maryland*, 12 Wall. 418. See, also, *Welton* v. *State*, 91 U. S. 275; *Yick Wo* v. *Hopkins*, 118 U. S. 367, 6 Sup. Ct. Rep. 1064.

Corporations are "persons," within the meaning of the fourteenth amendment, and a tax law of a state which in its operation discriminates against them is a denial as to them of the equal protection of the laws. *Santa Clara Co.* v. *Railroad Co.*, 13 Amer. & Eng. R. Cas. 182, 18 Fed. Rep. 385; *San Mateo* v. *Railroad*, 8 Amer. & Eng. R. Cas. 1; *Santa Clara Co.* v. *Railroad Co.*, 118 U. S. 396, 6 Sup. Ct. Rep. 1132; *Bureau Co.* v. *Railroad Co.*, 44 Ill. 229; *Railway Co.* v. *Boone Co.*, Id. 240; *Law* v. *People*, 87 Ill. 385; *City of East St. Louis* v. *Wehrung*, 46 Ill. 392; *Marsh* v. *Clark Co.*, 42 Wis. 502; *Railroad Co.* v. *Taylor Co.*, 52 Wis. 37, 8 N. W. Rep. 833.

The state cannot discriminate in favor of individuals. A tax must extend to all of a class, or it will be invalid as to any. *Wynne* v. *Wright*, 1 Dev. & B. 19; *Wiggins* v. *Chicago*, 68 Ill. 372; *Wiley* v. *Palmer*, 14 Ala. 627; *Cowles* v. *Brittain*, 2 Hawks, 204; *State* v. *City Council*, 10 Rich. Law, 240; *State* v. *Pinckney*, 10 Rich. Law, 474; *Corfield* v. *Coryell*, 4 Wash. C. C. 380; *Plymouth* v. *Pettijohn*, 4 Dev. 591; *Ward* v. *Morris*, 4 Har. & McH. 340; *State* v. *North*, 27 Mo. 464; *Topeka* v. *Gillett*, 32 Kan. 434, 4 Pac. Rep. 800. See, also, *Strauder* v. *West Virginia*, 100 U. S. 303; *Railway* v. *Humes*, 115 U. S. 512, 6 Sup. Ct. Rep. 110; *Lexington* v. *McQuillan*, 9 Dana, 513; *Doyle* v. *Insurance Co.*, 94 U. S. 535; *Insurance Co.* v. *Morse*, 20 Wall. 445; *Ducat* v. *Chicago*, 10 Wall. 410. The case at bar is essentially different from *Fire Ass'n* v. *New York*, 119 U. S. 110, 7 Sup. Ct. Rep. 108.

*Clifford Anderson*, Atty. Gen., for respondent.

---

[1] A law which taxes a class of property separately is not unconstitutional if it embraces all property of that class, and applies to it uniform rules, and taxes it according to its value. Board of Assessors v. State, (N. J.) 4 Atl. Rep. 578, 8 Atl. Rep. 724. A law taxing all of a class alike, as liquor dealers within five miles of a town at one price, and liquor dealers at wayside inns at a less price, is not invalid on the ground of uniformity. Territory v. Connell. (Ariz.) 16 Pac. Rep. 209.

NEWMAN, J. Complainant, a corporation created by the laws of New Jersey, files its bill against defendant, and says that it has been for a number of years engaged in selling sewing-machines in this way: Machines are shipped from its factory at Elizabeth, New Jersey, to agents in different parts of the world, including the state of Georgia, and are sold by such agents through subagents to persons desiring to use them for sewing. It does no wholesale business in Georgia, but deals directly with and sells to consumers exclusively. It deals exclusively in Singer sewing-machines, needles, findings, and attachments connected therewith. It is further alleged in the bill, and an amendment thereto, that there are a large number of individuals and firms engaged in the sale of sewing-machines manufactured by other companies, at retail in Georgia, not as agents of the companies whose machines they sell, but engaged in such business in their own right, and on their own account. They send out agents, as complainant does, and some of them do a large business. These dealers compete directly with complainant. Complainant pays its regular taxes on all its property. Complainant has in the state of Georgia $25,000 worth of property, comprising sewing-machines, horses, wagons, outfits, etc., and has outstanding some 2,000 executory contracts. It has been engaged in business in Georgia some 15 years. Complainant further says that at its session in 1886 the legislature of the state of Georgia passed a general tax act for said state for the years 1887 and 1888; that paragraph 17 of section 2 of said act is as follows:

"Upon every sewing-machine company selling or dealing in sewing-machines in this state, and upon all wholesale dealers in sewing-machines, selling sewing-machines manufactured by companies that have not paid the tax herein required, two hundred dollars for each fiscal year or fractional part thereof, to be paid to the comptroller general at the time of commencement of business, and, in addition to the above amount, said companies or wholesale dealers shall furnish the comptroller general a list of all agents authorized to sell machines, and shall pay to said comptroller general the sum of ten dollars for each of their agents in each county, for each year or fractional part thereof, and upon the payment of such sum the comptroller general shall issue to each of said agents a certificate of authority to transact business in this state, and all sewing-machines belonging to such companies, dealers, or their agents, in possession of such companies, dealers, or their agents, or others, shall be liable to seizure and sale for the payment of such license fees and tax. This tax shall be for the whole state, and such companies, their agents, and wholesale dealers shall not be liable for any county tax or license fees by the counties for selling sewing-machines therein, and said agents shall be required to register their names with the ordinary, and exhibit their license from the comptroller general at the time of registering, and thereafter keep the same posted on their wagons or vehicles, or at their places of business. When a company or wholesale dealer transfers an agent from one county to another, said company or dealer shall notify the comptroller general in advance of such transfer. In cases where wholesale dealers sell sewing-machines manufactured by different companies, such dealers shall pay the license fees and tax above provided for, separately, for each company whose manufacture of machines may be sold by such dealers, unless each of said companies has itself paid such license fees and tax. Any person who shall violate the provisions of this section shall be liable to indictment for misdemeanor, and on conviction shall be fined not more than five hundred dollars, and not less than one hundred dol-

lars, in the discretion of the court trying the same. If said fine is not paid within the time prescribed by the court, such person so fined shall be imprisoned as prescribed in section 4310 of the Code."

Complainant further says that the comptroller general does not intend to enforce this act against individuals and firms engaged in selling sewing-machines on their own account; but that he does intend to enforce it against complainant, and is already proceeding to do so. It employs about 40 agents, for each of whom the comptroller general demands $10 under said act. The answer denies generally the allegations in the bill; but the proof submitted shows them to be substantially true.

Complainant's position then is, as stated in its bill, and elaborated in argument, that the paragraph of the tax act above quoted, is violative of, and in conflict with, the constitution of the United States, and of the state of Georgia, as follows:

*First*, that it conflicts with paragraph 3, § 8, art. 1, of the constitution of the United States, and also with paragraph 1, § 2, art. 4. These clauses provide that congress shall have power to "regulate commerce * * * among the several states," and that "the citizens of each state shall be entitled to all privileges and immunities of citizens in the several states." Complainant's counsel do not insist earnestly upon these points however, and, indeed, could not well do so. The language of the act is certainly broad enough to cover all sewing-machine companies, whether the company be of this state or of another state. It is "upon every sewing-machine company selling or dealing in sewing-machines by itself or its agents in this state," etc. The words "by itself" are evidently intended to cover companies operating and having their home office or residence in Georgia. The fact, and probably such is the fact, that no sewing-machines are manufactured in this state, cannot change this matter if the language of the tax act embraces such companies as are now, or may hereafter during the operation of the law be, engaged in such manufacture in the state. This it clearly does. I am satisfied, therefore, that the first position of complainant is not well taken.

The *second* point made, or position assumed, is that this paragraph of the tax act of 1886 is violative of and in conflict with the fourteenth amendment to the constitution of the United States. The language of the amendment which is invoked here is: "No state shall * * * deny to any person within its jurisdiction the equal protection of the laws." It is alleged and argued in brief that a burdensome tax is put by this law upon complainant that is not put upon others engaged in the same business. It was for some time doubted by the court whether the word "person," as used in the fourteenth amendment, included corporations. Indeed, it has been settled by some courts that it does not. But it is now considered settled, I presume, by the language used by Chief Justice WAITE, speaking for the supreme court, in the case of *Santa Clara Co.* v. *Railroad*, 118 U. S. 396, 6 Sup. Ct. Rep. 1132, that corporations are so included and entitled, as fully as natural persons, to its protection. As to the fourteenth amendment, and private corporations, see, however, *Fire Ass'n* v. *New York*, 119 U. S. 110, 7 Sup. Ct. Rep.

108. The question, then, here is, does this amendment to the federal constitution apply to cases of alleged unjust and unequal taxation by a state? And if so, is complainant denied by this taxing act "the equal protection of the laws?" Counsel for complainant rely mainly, to sustain the affirmative of this proposition, on the case of *San Mateo Co.* v. *Railroad Co.*, 13 Fed. Rep. 722, 8 Amer. & Eng. R. Cas. 1, and *Santa Clara Co.* v. *Railroad Co.*, 18 Fed. Rep. 385, 13 Amer. & Eng. R. Cas. 182, decided by Mr. Justice FIELD, and concurred in by Judge SAWYER in the United States circuit court for the district of California. By the thirteenth article of the constitution of California "a mortgage, deed of trust, contract, or other obligation by which a debt is secured" is treated for the purpose of assessment and taxation as an interest in the property affected thereby, and, "except as to railroads and other *quasi* public corporations." the value of the property affected, less the value of the security, is to be assessed and taxed to its owner, and the value of the security is to be assessed to its holder. By the same article "the franchise, roadway, road-bed, rails, and rolling stock of all railroads operated in more than one county are to be assessed at their actual value, and apportioned to the counties, cities, and districts in which the roads are located, in proportion to the number of miles of railway laid therein;" no deduction from this value being allowed for any mortgage on the property. It was held "that in the different modes this prescribed of assessing the value of the property of natural persons and the property of railroad corporations as the basis of taxation, there is a departure from the rule of equality and uniformity." It was further held that "private corporations are persons, within the meaning of the first section of the fourteenth amendment, and are entitled, so far as their property is concerned, to the equal protection of the laws." I have quoted the head-notes in the *San Mateo Case,* and the decision was substantially the same in the *Santa Clara Case.* Other questions were involved in both cases, not material here. It will be perceived that by the constitution of California, in assessing the property of natural persons for taxation, deduction was to be made for the amount of mortgages thereon; but in the case of railroads no such deduction should be made. It may be proper to state that both these cases were taken to the supreme court; but the constitutional questions involved were not decided in either by that court. The *San Mateo Case* was settled before a decision was rendered; and in the *Santa Clara Case* the court declined to decide the constitutional question, placing its judgment of affirmance on other grounds.

In the *State Railroad Tax Cases,* 92 U. S. 575, the fourteenth amendment was not specially drawn in question, but the supreme court held that a statute which prescribed a different rule of taxation for railroad companies from that of individuals did not violate the state constitution; and in the language of the sixth head-note, "nor does it violate any provision of the constitution of the United States." So that, in view of the latter case, and of a number of other decisions by the supreme court, I do not know how far the *San Mateo* and *Santa Clara Cases* should be regarded as authority, but, giving them that weight to which the emi-

nent position and learning and ability of the justice and judge presiding entitle them, I do not see that they control the question here. One marked distinction is that there the tax was on property, as to which a much stricter rule can be and is enforced than as to business. Property can be taxed a certain fixed per cent. on its value, and the tax can be easily ascertained and collected. As to business this cannot be done, or at least cannot be done without great difficulty. So that a very general practice in all the states, I think, is to assess a specific tax on business, the amount of such tax being fixed, of course, with reference to the amount and character of the business.

Again, the action of California was positive and affirmative, fixing in the law one basis for assessing the property of natural persons for taxation, and a different basis, and a highly discriminating rule, as to railroads. Here, the complaint is of omission to act,—omission to include certain dealers in the scheme of taxation. There, that which it was held rendered it unconstitutional appeared on the face of the law. Here, it requires evidence *aliunde* to justify even an attack on the law. But I think it unnecessary to pursue this branch of the investigation further.

It is not claimed that the clause of the constitution of Georgia, which as to business tax only requires uniformity as to "the same class of subjects," is in any way violative of the constitution of the United States; so that, if the scheme of taxation provided by the paragraph and section of the act of 1886 drawn in question here is not repugnant to the state constitution, I do not see how it denies to complainant "the equal protection of the laws." There are several other state constitutions in which the language restrictive of the taxing power is identical with that of the constitution of Georgia. There are many others substantially the same. It will never be held anywhere, I imagine, that the state may not classify business for taxation.

This brings me to the consideration of the question, is this tax act violative of or in conflict with the state constitution? The clause referred to, article 7, § 2, par. 1, is as follows:

"All taxation shall be uniform upon the same class of subjects, and *ad valorem* on all property subject to be taxed within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws."

The requirement that taxation shall be *ad valorem* on all property subject to be taxed, has been held by the supreme court of Georgia in many cases not to apply to taxation of business. *Burch* v. *Mayor, etc.*, 42 Ga. 596; *Bohler* v. *Schneider*, 49 Ga. 195; *Insurance Co.* v. *City Council*, 50 Ga. 530; *Mayor, etc.*, v. *McWilliams*, 52 Ga. 251; *Goodwin* v. *Mayor, etc.*, 53 Ga. 410; *Mayor, etc.*, v. *Bank*, 60 Ga. 133; *Gaskill* v. *Davis*, 63 Ga. 645; *Davis* v. *Macon*, 64 Ga. 128. The power to tax business is controlled only by the clause "all taxation shall be uniform upon the same class of subjects." This is a restriction upon the power to tax, but the restriction is as to uniformity, and this uniformity as to "the same class of subjects." The power to classify and arrange into classes of subjects is not limited or restricted. This is left to the legislature. A mere ar-

bitrary arrangement of the same business precisely into separate classes, and discriminating taxes as to the classes, might not be upheld. But where there is reasonable difference and distinction, the legislature is unrestricted in the matter of classification. Here, sewing-machine companies selling sewing machines in this state and wholesale dealers are placed in a class and taxed uniformly. Complainant's counsel insist, first, that the expression "sewing-machine companies," applies only to corporations, and that it makes a class out of corporations doing a sewing-machine business, and fails to include firms and individuals doing a similar business. It is insisted with much more earnestness, however, that even if the language used is held to include corporations, joint-stock companies, and partnerships, it certainly does not include individuals engaged singly in manufacturing and selling sewing-machines. The first point is clearly erroneous. The term "sewing-machine companies" includes necessarily all "companies," whether corporate, joint-stock, or firms; and I am inclined to think it includes individuals engaged in manufacturing sewing-machines, and in selling the same in Georgia. The legislature evidently desired to put this tax on *all manufacturers* of sewing-machines engaged in selling by themselves or agents in this state; and it did not attempt thereby to tax the manufacturing, which in complainant's case is done out of the state, as is argued here, but it taxes the *business of selling*. It places manufacturers engaged in selling in Georgia in a class of sellers, whether selling by wholesale or by retail. Why is it not competent for the legislature to do this? In delivering the opinion of the court in *Davis* v. *Macon*, 64 Ga. 128, Judge BLECKLEY uses this language:

"The constitutional requirement that all taxation shall be uniform on the same class of subjects is not infringed by the ordinances in the provision we are considering. The producer, whose trade is incident to production, and the middle-man, whose trade is intermediary between the producer and the consumer, belong not to the same class, but to different classes of subjects, in a scheme of taxation. At least the difference is wide enough to justify, if not compel, its recognition in shaping the ordinance."

The context shows that the matter under discussion is sales by the producer as a subject of taxation, and not the production; and also of sales in a city of products raised out of the city. Change the term "producer," used by Judge BLECKLEY, to "manufacturer," and the application of the language to this case is perfect. I think the legislature assumed, in passing this act, that companies engaged in selling their own machines through general agencies did a large business, and should be classed with wholesale dealers. This assumption, as to the Singer company at least, is fully borne out by the statements in the bill. But complainant says that it sells in Georgia exclusively to consumers or users; in other words, does a retail business entirely, and that there are a large number of other retail dealers, individuals, and firms, that are not taxed. I see no reason why the state may not fail to tax certain classes of business. The head-note to the case of *Cutliff* v. *Mayor, etc.*, 60 Ga. 597, is in these words:

"The provisions of the constitution of 1877 that 'all taxation shall be uniform upon the same class of subjects * * * within the territorial limits of the authority levying the tax,' does not prevent the imposition by a municipal corporation of a tax on one class of business and not on another."

In the second head-note to *Davis* v. *Macon*, 64 Ga. 128, this language is used:

"The validity of this specific tax is not impaired by exempting the wagons used in delivering milk from dairies on country farms, since the city may tax one class of business and exempt another, or may tax different occupations and their instrumentalities unequally."

If this be true as to municipal corporations, it is certainly true as to the state, whose creature the municipality is. If the classification is proper, therefore, this objection to the act is not good. In Cooley, Tax'n, 164–171, (2d Ed.) the rule laid down by the supreme court of Georgia is fully sustained. I quote from page 165:

"The legislature must decide when and how, and for what public purpose, a tax shall be levied, and must select the subjects of taxation. All this is legislative, and the legislative conclusion in the premises must be accepted as proper and final."

Much more authority might be cited to the same effect. But I think the supreme court of Georgia has clearly indicated in the decisions cited how this clause should be construed; and that construction which the highest court of the state would adopt will govern in the federal courts. *State Railroad Tax Cases*, 92 U. S. 575; *Post* v. *Supervisors*, 105 U. S. 667. Courts will not hesitate, if a statute is clearly unconstitutional, to so declare it. But it must be clear that it is repugnant to the constitution. On this subject, said Chief Justice MARSHALL, in *Fletcher* v. *Peck*, 6 Cranch, 87:

"The question whether a law is void for its repugnancy to the constitution is at all times a question of much delicacy, which ought seldom, if ever, to be decided in a doubtful case."

The power to raise revenue for the support of the government is necessary to its existence; and, as incident to this power, the right to determine upon what subjects, and when, and how the revenue shall be collected. And the courts do not undertake to protect against very objectionable taxation, unless it be violative of the constitution.

I do not believe that this tax is violative of either the constitution of the United States or the constitution of the state, and I must consequently deny the injunction prayed for, and dismiss the bill.