JOHN L. and M. P. EFLAND, trading as THE ORANGE MANUFAC-
TURING COMPANY, v. SOUTHERN RAILWAY COMPANY.

(Filed 20 November, 1907).

1. Railroads—Carriers—Class Discrimination—Reasonable Regula-
tions.

As to intrastate or domestic matters, the General Assembly has
the right to establish regulations for public service corporations
and for business enterprises ,in which the owners have devoted
their property to public use, and to apply these regulations to cer-
tain classes of pursuits and occupations, imposing these require-
ments equally on all members of a given class, the limitation of
this right of classification being that the same must be on some
reasonable ground that bears a just and proper relation to the
attempted classification and is not a mere arbitrary selection.

2. Same—Carriers—Class Discrimination—Overcharge—Penalty
Statutes.

Revisal, secs. 2642, 2643, 2644, establishing certain regulations
as to charges by railroad, steamboat, express and other trans-
portation companies, and imposing a penalty on said "companies"
for failure to return an overcharge wrongfully made within a
given time, applies to all corporations, companies or persons who
are engaged as common carriers in the transportation of freight,
and does not discriminate against defendant corporation by ex-
cepting either firms or individuals engaged in this service from .
its provisions.

3. Same—Debt.

The penalty imposed by Revisal, sec. 2644, to be recovered by
the party aggrieved, for the failure of the railroad to refund an
overcharge under the conditions therein named, is not for the
nonpayment of a debt, in the ordinary acceptation of the term,
but for wrongfully withholding an amount charged contrary to
law, after the railroad company has time to investigate the de-
mand therefor and to be informed of the facts, and it is in direct
enforcement of the carrier's duty.

4. Same—Rates—Printed Tariff—Refund—Statutory Time—Consti-
tutional Law.

These sections of the Revisal—section 2642, directing that no
 - railroad company shall collect or receive for the transportation
of property more than the rates appearing in the printed tariff;
section 2643, prescribing the method of making demand upon the
company for return of the overcharge, allowing sixty days for
such return, and section 2644, providing a forfeiture, etc., to the

party aggrieved—impose reasonable regulations for certain classes of pursuits and occupations equally on all members of a given class, applying alike in a just and proper relation to corporations, companies, firms or individuals therein engaged, and, therefore, not inhibited by the Fourteenth Amendment to the Federal Constitution.

5. **Same.**

When it is established by the verdict of the jury, under admitted facts and proper instructions from the Court, that the defendant railroad has failed to return an overcharge to the plaintiff, made in excess of the rates appearing in the printed tariff, for the shipment of freight within the statutory time allowed, in accordance with the provisions of Revisal, secs. 2642, 2643, the defendant is liable for the penalties prescribed in Revisal, sec. 2644.

(*Cottrell v. Railroad*, 141 N. C., 383, cited and approved).

### DEFENDANT'S APPEAL.

ACTION tried on appeal from the court of a justice of the peace, before *Councill, J.,* and a jury, at August Term, 1907, of the Superior Court of ORANGE County.

The demand was for the amount of an overcharge paid by plaintiffs on a shipment from Efland, in North Carolina, to Lexington, N. C., and for a penalty for failure to adjust same, imposed by section 2644, Revisal 1905.

There was evidence on the part of plaintiffs tending to establish the claim and formal demand therefor, as required by the statute.

The Judge charged the jury as follows: "That, if they should find from the evidence that the plaintiffs had paid an overcharge of $7.96, as alleged by plaintiffs, and that plaintiffs had filed claim, as alleged, on the 20th day of September, 1906, accompanied with paid freight receipt and bill of lading, with the freight claim agent of the defendant company, and the same was not refunded within sixty days after the filing of said claim, then the plaintiffs would be entitled to recover $100 as penalty for such failure to settle the demand, it being admitted that more than sixty days had lapsed since the claim was filed."

On the testimony and under the charge, the jury rendered the following verdict: "Is defendant indebted to plaintiffs, and if so, in what amount?"  Answer: "Yes—first, by way of overcharge, $7.96; second, by way of penalty, $100."

Defendant, by exception, duly noted, objected to the validity of the judgment, and appealed, assigning for error: That the statute imposing the penalty is in violation of section 1 of the Fourteenth Amendment to the National Constitution, and denies to the defendant the equal protection of the law.

*Frank Nash* for plaintiffs.
*F. H. Busbee & Son* and *S. M. Gattis* for defendant.

HOKE, J., after stating the case: Our statute applicable to the questions involved in this appeal (Revisal 1905, ch. 61, sec. 2642) directs: "That no railroad, steamboat, express or other transportation company engaged in the carriage of freight, and no telegraph company or telephone company shall demand, collect or receive for any service rendered or to be rendered in the transportation of property or transmission of messages more than the rates appearing in the printed tariff of such company in force at the time such service is rendered, or more than is allowed by law."  In section 2643 a method is established by which formal demand for return of an overcharge shall be made, which allows a maximum period of sixty days within which to return the same; and section 2644 (the section objected to) provides as follows: "Any company failing to return such overcharge within the time allowed shall forfeit to the party aggrieved the sum of $25 for the first day and $5 per day for each day's delay thereafter until said overcharge is paid, together with all costs incurred by the aggrieved: *Provided,* the total forfeiture shall not exceed $100."

Under the charge of the Court, and the admissions therein referred to, the facts are necessarily established that there has

been an overcharge for freight collected from plaintiffs by defendant; that demand for its return has been formally made as required by the statute, and that there has been a failure to return the amount to plaintiffs for a period greater than the sixty days declared to be the maximum period allowed, and for a time more than sufficient to make the maximum penalty of $100. On the facts, therefore, the plaintiffs' claim comes directly within the provisions of the statute, and, unless the law is invalid, the judgment in their favor must be upheld. This being a domestic or intrastate shipment, the commerce clause of the Federal Constitution, and the various decisions construing it, do not affect the case; and the question presented, and which the defendant desired and intended to present, is whether this legislation is in conflict with the provisions of the Fourteenth Amendment, guaranteeing to every citizen of the United States equal protection of the law. The statute has been passed upon by direct adjudication of this Court in *Cottrell v. Railroad,* 141 N. C., 383, and we might well refer to that decision as conclusive of the matter without more. It was, however, earnestly urged on the argument of the present appeal that the law in question is in violation of the section of the Constitution referred to. And, as the constitutionality of the statute was accepted, without debate, in *Cottrell's case, supra,* we have deemed it well that the positions contended for by defendant should be more fully considered.

The right of the State to establish regulations for these public service corporations, and over business enterprises in which the owners, corporate or individual, have devoted their property to a public use, and to enforce these regulations by appropriate penalties, is now and has long been too firmly established to require or permit discussion. *Harrill's case,* 144 N. C., 532; *Stone's case,* 144 N. C., 220; *Walker's case,* 137 N. C., 168; *McGowan's case,* 95 N. C., 417; *Branch's case,* 77 N. C., 347; *Railway v. State of Florida,* 203 U. S.,

261; *Railway v. Helms,* 115 U. S., 513; *Mobile v. Kimball,* 102 U. S., 691; *Munn v. Illinois,* 94 U. S., 112.

As said by *Associate Justice Fields,* in *Helms' case, supra,* "The power of the State to impose fines and penalties for a violation of its statutory requirements is coeval with government; and the mode in which they shall be enforced, whether at the suit of a private party or at the suit of the public, and what disposition shall be made of the amounts collected, are merely matters of legislative discretion. The statutes of nearly every State of the Union provide for the increase of damages where the injury complained of results from the neglect of duties imposed for the better security of life and property, and make that increase in many cases double, in some cases treble, and even quadruple the actual damages. And experience favors this legislation as the most efficient mode of preventing, with the least inconvenience, the commission of injuries. The decisions of the highest courts have affirmed the validity of such legislation. The injury actually received is often so small that in many cases no effort would be made by the sufferer to obtain redress if the private interest were not supported by the imposition of punitive damages." And the right to establish such regulations for certain classes of pursuits and occupations, imposing these requirements equally on all members of a given class, has been made to rest very largely in the discretion of the Legislature. *Tullis v. Railway,* 175 U. S., 348; *Insurance Co. v. Daggs,* 172 U. S., 562; *McGowan v. Savings Bank,* 170 U. S., 286.

In *Tullis' case,* just referred to, *Chief Justice Fuller,* quoting with approval from the decision in *Daggs' case, supra,* said: "The power of the State to distinguish, select and classify objects of legislation necessarily has a wide range of discretion; that it was sufficient to satisfy the demands of the Constitution, if the classifications were practical and not palpably arbitrary." There are limitations on the right of a State Legislature to impose these regulations, as indicated in

*Smith v. Ames,* 169 U. S., 466, and other cases of a like import, the exact nature and extent of which are not as yet fully or clearly defined. As said by Mr. Freunde, in his work on the Police Power, sec. 550, "It has been shown that, after some hesitation, the courts have asserted and now fully exercise the power to control the legislative determination that a rate is reasonable. It has, therefore, become encumbent upon the courts to lay down the principles by which the question of reasonableness must be judged, and the Federal Supreme Court alone can conclusively establish these principles in an affirmative manner. However, this important problem has not yet been finally solved."

From the very nature of the case, it would be difficult, perhaps impossible, to lay down a general rule so plain and precise that different cases could be readily referred to the one side or the other; and the United States Supreme Court has very wisely determined that the line shall be marked and the doctrine explained and applied by their decisions on the varying cases as they may arise.

This phase of the matter is not pursued further, for the reason that the defendant does not assail the law because the regulations thereby imposed are unreasonable in themselves, but because it establishes an unreasonable and arbitrary classification:

1st. In imposing the regulation therein specified on corporations and companies engaged in the transportation of freight, while individuals engaged in like service are not included.

2d. Because a penalty is imposed on corporations and companies mentioned for not paying their debts, and in this denying such companies the equal protection of the law, on the principle established more especially by the decision of the Supreme Court of the United States in *Railway v. Ellis,* reported in 165 U. S., 151. In *Ellis'* case it is held: "The mere fact of classification is not sufficient to relieve a statute

from the reach of the equality clause of the Fourteenth Amendment, and in all cases it must appear, not merely that a classification has been made, but also that it is based upon some reasonable ground—something which bears a just and proper relation to the attempted classification and is not a mere arbitrary selection." And, while this Court gives full adherence to the principle there stated, we are of opinion that its proper application does not sustain the defendant in either position maintained by it.

As to the first, "That it denies to defendant equal protection of the law, in that individuals engaged in like occupations are not included in the term of the statute," even if the construction assumed as the basis of this position should be the true one, we are inclined to the opinion that the classification could be upheld, applying as it does to all corporations and companies engaged in the transportation of freight as common carriers. The terms are, we think, sufficiently broad and the regulations thereunder have such a reasonable relation to the occupation in which the companies are engaged that the Legislature, in the proper exercise of its police power, might well have determined that such a classification could be upheld on the principle established by the cases heretofore cited, and that, even if individuals were shown to have engaged in like occupations, their enterprises would necessarily be so restricted and of such little moment that their cases would not require that they should be embraced by the statute. But we are of opinion that the construction of the law assumed by the defendant is not the correct one. A perusal of the entire statute and its different sections, taken in connection with those sections of chapter 20, Revisal of 1905, which deal with cognate subjects and whereby the Corporation Commission is given power to establish these regulations in reference to companies engaged in domestic traffic, leads to the conclusion that the Legislature applied, and intended to apply, these provisions of the law to all corporations and companies

engaged in the transportation of freight for the public; that
it was the occupation which it had chiefly in mind, rather than
the agency engaged, and that the term "company" was used
and intended to include all corporations, companies, firms or
individuals who were engaged as common carriers in the
transportation of freight.   Many of the sections of the statute
could be referred to in support of this construction, and this
interpretation has been frequently applied to the word "com-
pany" in statutes passed in promotion of the public weal, in
enforcement of the collection of revenue, in regulating the
proper exercise of *quasi* public franchises, and in other regu-
lations of like character.

   This significance was given to the term "company" in the
case of *Sewing Machine Co. v. Wright*, 97 Ga., 114, where an
occupation tax was collected from an individual engaged in a
pursuit where only "companies" were taxed, and *Lumpkin,*
Judge of the Court, said: "The most serious question for
determination as to the constitutionality of the law in hand,
in view of the 'uniformity clause' above mentioned, is this:
Is its language sufficiently comprehensive in meaning to em-
brace all manufacturers of sewing machines who sell at retail?
Unless it is, the law must fail, because, when once a class is
established, every member properly belonging to that class
must be taxed, or else the uniformity required is destroyed.
If the words 'every sewing machine company' are applicable
only to corporations or partnerships, then individuals manu-
facturing and selling sewing machines would not be reached.
It may be true, in point of fact, that there are no single indi-
viduals in Georgia answering to this description; but the law
should be broad enough in its terms to include any person who
may at any time, upon his own account, enter upon such busi-
ness, for otherwise it would be possible for an individual to
begin the transaction of this very business and escape tax
which corporations in the same business are compelled to pay.
An omission of this kind in a taxing law might in some in-

stances operate as an invitation to individuals to undertake business enterprises because of an attendant nonliability for taxes, and a consequent advantage to be gained over competitors engaged in the same business who are specifically named and taxed. . At any rate, such an omission makes a discrimination, which the Constitution forbids. We think, however, that, so far as the law with which we are now dealing is concerned, the whole difficulty may be properly removed by simply holding that the words 'every sewing machine company' would apply to every sewing machine 'man' who undertook to engage in the manufacture and sale of such machines in this State. This construction, upon reflection, will be found not to be a strained or unreasonable one. On the contrary, we think it is entirely permissible when reference is had to the object of the law in question, that object being, not to tax a company or person carrying on the business, but the business itself. Of course, if the tax be upon the business, it is entirely immaterial whether such business be carried on by an individual, a partnership or a corporation. As has been seen, the power of the Legislature extends only to classifying business occupations into different branches and laying upon each separate branch thus created such a tax as is deemed proper. The Legislature has absolutely no power to classify persons, natural or artificial, engaged in precisely the same occupation, laying a tax upon some of them and exempting others, or imposing a tax not operating uniformly upon all. Therefore, it would certainly seem the most natural and reasonable inference that the General Assembly, in passing the law in question, attempted to accomplish what it had an undoubted right to do, rather than that which the Constitution expressly forbids. It should be the purpose of the courts to give effect to legislative intention, and, where the intention is not perfectly clear, the unbending rule is that such a reasonable construction of the statute as will render it harmonious with the constitutional restrictions should invariably be adopted. In

the present instance we are quite sure the Legislature intended that this tax should apply to the business in question, no matter by whom the same might be conducted."

And decisions of like import have been made elsewhere by courts of the highest authority. *Missouri v. Stone,* 118 Mo., 388; *Dock and Canal Co. v. Garrets,* 115 Ill., 155; *Morvan v. Ross,* 79 Cal., 159; *Manufacturing Co. v. Wright,* 33 Fed., 121. The statute in question does not make the discrimination complained of by defendant, and its first position, therefore, finds no support in the law as correctly construed.

And we hold that the second ground of defendant's objection to the statute is not well considered, being of opinion that it does not come within the principle of the decision relied on to support it. *Ellis' case, supra.* That decision involved the validity of a statute of the State of Texas, which imposed a fee of $10 on claims against railroad companies, not exceeding $50, for personal service rendered or labor done, a damage for overcharge on freight, etc., which the company failed to pay for thirty days after demand was duly made, and which claimant was compelled to collect by action, etc. The statute was held unconstitutional and a recovery by plaintiff denied. This, as we understand the opinion, was on the ground that the statute embraced claims for personal services rendered or labor done, as well as for damages for all overcharges of freight, etc., and the Supreme Court of Texas having held the statute constitutional as a whole, the United States Supreme Court, accepting that construction of the statute, considered it as one imposing a penalty for the nonpayment of debts, and, as such, having no reasonable reference especially to a railroad, as distinguished from any other corporation, or the proper exercise of its franchise, or the performance of its duties, or the dangers incident to its operation, and held that such a classification was, therefore, arbitrary and colorable, and the penalty imposed pursuant to same was contrary to law. But the principle does not obtain where the law which

establishes the regulations and imposes the penalties makes a classification resting on some reasonable ground and having some real relation to the privileges enjoyed or duties especially encumbent on all members of the class which it creates. Accordingly, in several opinions determined since the *Ellis case,* notably in the case of *Railway v. Paul,* 173 U. S., 404, and *Railway v. Mathews,* 174 U. S., 96, the same high Court, the final arbiter in such questions, has upheld classifications for the reason indicated, and these opinions are, to our mind, controlling in the case we are considering, and decide the questions raised against defendant's position.

In *Mathews' case, supra,* a statute of the State of Kansas allowed an attorney's fee in case of recovery against railroad companies for damages caused by fires in the operation of the company's trains. The statute was upheld because the Court was of the opinion that the classification established was not arbitrary, as in *Ellis' case,* but was made in reference to the damages from fires peculiarly incident to the operation of trains. *Mr. Justice Brewer,* for the Court, said: "Its monition to the roads is not 'Pay your debts without suit, or you will have to pay for attorney's fee,' but, rather, 'See to it that no fire escapes from your locomotives, for if it does, you will be liable, not merely for the damage it causes, but also for the reasonable attorney's fee of the owner of the property injured or destroyed.' " And so it is here. The penalty imposed is not for the nonpayment of a debt, in the ordinary acceptation of that term, but it is for having made an extortionate charge and failing to return the same within a reasonable time after demand was formally made, pursuant to law.

The regulation established in section 2642, applying, as we have seen, to all corporations and companies, including firms and individuals, engaged as common carriers in the transportation of freight, is one that the Legislature had the undoubted right to make. Its proper application and efficient

146—10

enforcement are of supreme importance to shippers and the public. The Legislature could, no doubt, have imposed a penalty for making an extortionate charge, and its power, of a certainty, is not impaired or destroyed, because, in reasonable consideration of the carrier's interest, it is allowed time to investigate the demand and inform itself of the facts. The penalty is imposed, as stated, not for the nonpayment of a debt, but for wrongfully withholding an amount charged contrary to law, and is in direct enforcement of the carrier's duties.

Since this opinion was prepared, our attention has been called to an opinion just delivered by the United States Supreme Court in the case of *Railway v. Seigers Bros.*, in which a statute of the State of South Carolina, similar to the one we are considering, was declared to be constitutional and valid. This opinion of the United States Court is decisive of the principal questions involved in this appeal, and the full and learned opinion of the South Carolina Supreme Court (reported in 73 S. C., 71) also gives convincing reason in support of the position.

There is no error in the defendant's appeal, and the judgment of the court below is affirmed.

No Error.