DIXIE-OHIO EXPRESS COMPANY *v.* STATE REVENUE COMMISSION *et al.*

No. 12230. JUNE 17, 1938.

*Watkins, Grant & Watkins* and *Allan Watkins,* for plaintiff in error.

*M. J. Yeomans, attorney-general, Dave M. Parker, O. H. Dukes,* and *W. H. Duckworth,* contra.

GRICE, Justice. The affidavit of illegality attacks as unconstitutional the motor-bus maintenance-tax act approved March 30, 1937 (Ga. Laws 1937, pp. 155-167). The act in question, by section 1, provides that "all persons, firms, corporations, or associations holding title to a motor-bus, truck and/or trailer, or having exclusive right to the use thereof for a period of more than thirty days, shall pay a maintenance tax for the operation of such motor-bus, truck, and/or trailer upon and over the public roads of this State, according to the schedule" provided by the terms of the act. The maintenance tax is to be levied in addition to any and all other taxes, licenses, or registration fees required under existing laws. The terms of the act definitely identify the license or fee pre-

scribed as a charge for the privilege of using the highways of the State. The entire amount of the tax collected under the provisions of the act is allocated for the construction and maintenance of public highways, to wit, post roads. No provision is made to deduct any part thereof for the expense of collection or for any regulatory purpose. By section 2 of the act are given certain definitions of the scope of the act's operation, and in section 3 the schedule of license fees to be exacted is set out. There are three classifications provided by this section: one is the license fee for the operation of passenger-carrying motor-buses; another is the fee applicable to and exacted from persons operating non-passenger-carrying motor vehicles or trucks not used as common or contract carriers for hire; the third schedule applies to non-passenger-carrying motor vehicles or trucks used as common or contract carriers for hire. The license fees prescribed are different under each of these classifications. There is also a classification applying to trailers or semi-trailers, and in each main classification above referred to the trucks or buses are classified according to weight or manufacturer's rated capacity and the tax fixed according to a graduated scale; that is to say, the larger or heavier or the greater the rated carrying capacity of the truck or bus, the larger the amount of tax exacted. The statute does not undertake to make any difference or distinction between the fees or charges applicable to persons operating interstate from those applicable to persons operating intrastate. The fee is the same without reference to whether the operations are interstate or intrastate.

■ The first insistence of the plaintiff in error is that the General Assembly could not, consistently with constitutional provision, provide for one class of carriers for hire, and another class of carriers not for hire, and charge different amounts for the two classes; and that accordingly the act discriminates against Dixie-Ohio Express Company, a common carrier of property for hire, in favor of private carriers of property. A State through its General Assembly may make classifications of subjects for taxation. The only constitutional requirement is that in so doing the classification so made shall have some rational basis. In *Wright* v. *Hirsch,* 155 *Ga.* 227, 236 (116 S. E. 795), this court discussed very fully this question, and, speaking through Mr. Justice Hines, said: "The power of the legislature to classify persons for the purpose of

imposing occupation taxes is undisputed. The provisions of the constitution with which we are dealing clearly recognize this power of classification. The power to classify necessarily includes the power to subclassify. The legislature does not exhaust its power in this matter when it puts dealers of a particular kind in one class. It can place grocers in a class by themselves. It can put cigar dealers in a class by themselves. It can do the same thing with any other class of merchants. It can then subdivide these classes into wholesale and retail dealers, and put a higher tax upon the former than upon the latter. Cook *v.* Marshall County, 196 U. S. 261 (25 Sup. Ct. 233, 49 L. ed. 471). In framing tax acts it has long been the custom of the legislature to divide merchants into wholesale and retail, and to place a higher occupation tax upon the former than upon the latter. This power of subclassification has been expressly declared to exist, by this court." On the question as to the scope of the power of a legislature to make classifications of businesses or subjects as a basis for a difference in treatment for tax purposes, see also: *Johnston* v. *Macon,* 62 *Ga.* 645; *Davis* v. *Macon,* 64 *Ga.* 128 (37 Am. R. 60); *Goodwin* v. *Savannah,* 53 *Ga.* 410; *Singer Mfg. Co.* v. *Wright,* 97 *Ga.* 114, 118 (25 S. E. 249, 35 L. R. A. 497); *Sawtell* v. *Atlanta,* 138 *Ga.* 687 (75 S. E. 982); *Hazleton* v. *Atlanta,* 144 *Ga.* 775 (87 S. E. 1043); *Price* v. *Richardson,* 159 *Ga.* 299 (125 S. E. 449); *Hunter* v. *Wright,* 169 *Ga.* 840 (152 S. E. 61); *Adams Motor Co.* v. *Cler,* 149 *Ga.* 818 (102 S. E. 440); *Featherstone* v. *Norman,* 170 *Ga.* 370, 386 (153 S. E. 58, 79 A. L. R. 449); *Southern Transfer Co.* v. *Harrison,* 171 *Ga.* 358 (155 S. E. 338); *Hoffman* v. *Harrison,* 171 *Ga.* 792 (156 S. E. 685); *Guerry* v. *Harrison,* 178 *Ga.* 669 (173 S. E. 831); *Milliron* v. *Harrison,* 175 *Ga.* 764 (166 S. E. 231, 84 A. L. R. 1142); *Coy* v. *Linder,* 183 *Ga.* 583 (189 S. E. 26).

In the recent case of Carmichael *v.* Southern Coal &c. Co., 301 U. S. 495-531 (57 Sup. Ct. 868, 81 L. ed. 1245), the Supreme Court of the United States discussed at length the power of a State or legislative body to make classifications of property for purposes of taxation. Involved in that case was the question of the constitutionality of the unemployment-insurance compensation act of Alabama; and it was contended that the act in question constituted an infringement of the due-process and equal-protec-

234

tion clauses, on the ground that there was exempted from the provisions of the act agricultural laborers, domestic servants, employees of charitable institutions and interstate railways, etc. In other words, the basis of the constitutional attack was an alleged discrimination. Answering the contention made, the court, through Mr. Justice Stone, said: "It is inherent in the exercise of the power to tax that a State be free to select the subjects of taxation and to grant exemptions. Neither due process nor equal protection imposes upon a State any rigid rule of equality of taxation [citing cases]. This court has repeatedly held that inequalities which result from a singling out of one particular class for taxation or exemption infringe no constitutional limitation [citing cases]. Like considerations govern exemptions from the operation of a tax imposed on the members of a class. A legislature is not bound to tax every member of a class or none. It may make distinctions of degree having a rational basis, and when subjected to judicial scrutiny they must be presumed to rest on that basis if there is any conceivable state of facts that would support it." (Citing cases.) The court further said: "This restriction upon the judicial function, in passing on the constitutionality of a statute, is not artificial or irrational. A State legislature, in the enactment of laws, has the widest possible latitude within the limitations of the constitution. In the nature of the case it can not record a complete catalog of the considerations which move its members to enact laws. In the absence of such a record courts can not assume that its action is capricious, or that, with its informed acquaintance with the local condition, to which the legislation is to be applied, it was not aware of facts which afford reasonable basis for its action. Only by faithful adherence to this guiding principle of judicial review of legislation is it possible to preserve to the legislative branch its rightful independence and its ability to function."

For other rulings on this same general subject by the Supreme Court of the United States, see Carley v. Snook, 281 U. S. 66 (50 Sup. Ct. 204, 74 L. ed. 705); Aero Mayflower Transit Co. v. Georgia Public-Service Commission, 295 U. S. 285 (55 Sup. Ct. 709, 79 L. ed. 1439); Continental Baking Co. v. Woodring, 286 U. S. 352 (52 Sup. Ct. 595, 76 L. ed. 1155); Clark v. Poor, 274 U. S. 554 (47 Sup. Ct. 702, 71 L. ed. 1199); Morf v. Bingham, 298

U. S. 407, 412 (56 Sup. Ct. 756, 80 L. ed. 1245). We think that the General Assembly can, for the purpose of taxation of this character, make classifications of carriers by truck, and make as one class those operating for hire either as contract or common carriers and the other as carriers not for hire. A rational basis for such classification readily appears. The carrier not for hire transports over the highways his own goods or property. He uses the highways only as the circumstances and exigencies of his own business require. His use of the highways is incidental only, while the carrier for hire operates over the highways transporting property of others, and charges compensation therefor. He makes the highways his place of business, and the natural tendency will of course be for him to use the highways more, truck for truck, than does the carrier not for hire. In many cases courts of last resort have held that the classification is justified; that the law-making body may tax the common carrier for hire using the highways and exempt altogether the carrier not for hire. Like classifications for similar purposes have been upheld by the courts generally. In Bekins Van Lines v. Riley, 280 U. S. 80 (50 Sup. Ct. 64, 74 L. ed. 178), the Supreme Court of the United States was asked to strike down an amendment to the constitution of California and statutes of that State laying upon common carriers engaged in transporting freight by motor vehicles for hire along public highways between fixed termini and over regular routes in California a tax upon their gross receipts, while other carriers were subjected to different and less burdensome taxation. The court held that there was no violation of the equal-protection clause, "since it can not be said that the classification lacks any reasonable basis." In the opinion it was said: "Appellants voluntarily assumed the position of common carriers operating between fixed termini and enjoy all consequent benefits. That a marked distinction exists between common and private carriers by auto vehicles appears from Frost v. Railroad Commission, 271 U. S. 583 (46 Sup. Ct. 605, 70 L. ed. 1101), and Michigan Public Utilities Commission v. Duke, 266 U. S. 570 (45 Sup. Ct. 191, 69 L. ed. 445, 36 A. L. R. 1105). Sufficient reasons for placing common carriers, operating as appellants do, in a special class are pointed out by Raymond v. Holm, 165 Minn. 215 (206 N. W. 166); State v. LeFebvre, 174 Minn. 248 (219 N. W. 167); Iowa Motor Ve-

hicle Asso. v. Railroad Com., 207 Iowa, 461 (221 N. W. 364); Liberty Highway Co. v. Michigan Public Utilities Commission, 294 Fed. 703. Their use of the highways probably will be regular and frequent, and therefore unusually destructive thereto. Also it will expose the public to dangers exceeding those consequent upon the occasional movements of other carriers." See also the annotations appended to the report of the case of Public-Service Commission of Wyoming v. Grimshaw, in 109 A. L. R. 534, 566 (49 Wyo. 158, 53 Pac. (2d) 1).

■ The maintenance-tax act is also criticized by plaintiff in error in that in each main classification, that is to say, the carriers for hire and the carriers not for hire, there is set up a subclassification based on the manufacturer's rated capacity of the vehicles used, and fixing a different rate of tax according to the manufacturer's rated capacity, and that there is no relationship between the manufacturer's rated capacity of a truck or motor vehicle and its weight, and consequently no reasonable relationship between the manufacturer's rated capacity and the wear and tear that such vehicle will cause to the highways by its use. The affidavit of illegality recites that "Rated capacity denotes the power of the motor, and not the weight or carrying capacity of the body of the truck." Even so, it would seem that the manufacturer's rated capacity of a motor vehicle has a direct and natural relation to the propensities of the vehicle to injure the highway, and to create public hazards. To make a classification based on the horse-power of the motor is not an arbitrary classification. It was expressly so decided in Lee v. State, 163 Ga. 239, 242 (139 S. E. 912), in Hendrick v. Maryland, 235 U. S. 610 (35 Sup. Ct. 140, 59 L. ed. 385), and in Kane v. New Jersey, 242 U. S. 160, 167 (37 Sup. Ct. 30, 61 L. ed. 222). See also Hicklin v. Coney, 290 U. S. 169 (54 Sup. Ct. 142, 78 L. ed. 247); Carley v. Snook, supra.

■ Still another ground of attack is that the tax collected is not used on the highways over which the plaintiff in error operates its trucks, but under the terms of the act it is allocated to rural post roads; that it is impossible for it to use the rural post roads of Georgia, because its routes within this State have been limited by the certificate granted it by the Interstate-Commerce Commission pursuant to the Federal motor-carrier act of 1935. U. S. C. A. title 49, §§ 301, 306. However, the privilege granted

the carrier by the maintenance-tax act of 1937 here under attack is unlimited. Under it, the carrier, provided it complies with other requirements of law as to license fee, etc., may use every road in the system, including those to the maintenance of which the tax here challenged is allocated, to wit, those roads, to use the words of the statute, in the "United States rural post-roads division of the State highway of Georgia." In Aero Mayflower Transit Co. v. Georgia Public-Service Commission, supra, it was said: "One who receives a privilege without limit is not wronged by his own refusal to enjoy it as freely as he may." The decision in Clark v. Poor, supra, dealt with an Ohio statute, and is in point here. It was there held: "A State regulation providing that, before operating over the State highways, a common carrier by motor shall apply for and obtain a certificate or permit therefor from a State commission, and shall pay an extra tax for the maintenance and repair of the highways and for the administration and enforcement of the laws governing their use, is constitutional though applied to carriers engaged exclusively in interstate commerce. . . That the tax so exacted is not all used for maintenance and repair of the highways, but some of it for defraying expenses of the commission in administration and enforcement of the act, and some for other purposes, is no concern of the taxpayer, it being assessed for a proper purpose and not unreasonable in amount." In the opinion it was said: "The plaintiffs claim, as applied to them, the act violates the commerce clause of the Federal constitution. They insist, that, as they are engaged exclusively in interstate commerce, they are not subject to regulation by the State; that it is without power to require that before using its highways they apply for and obtain a certificate; and that it is also without power to impose, in addition to the annual license fee demanded of all persons using automobiles on the highways, a tax upon them, under § 614-94, for the maintenance and repair of the highways and for the administration and enforcement of the laws governing the use of the same. The contrary is settled. The highways are public property. Users of them, although engaged exclusively in interstate commerce, are subject to regulation by the State to insure safety and convenience and the conservation of the highways [citing Morris v. Duby, 274 U. S. 135 (47 Sup. Ct. 548, 71 L. ed. 966); Hess v. Pawloski, 274 U. S. 352 (47 Sup. Ct. 632,

71 L. ed. 1091)]. Users of them, although engaged exclusively in interstate commerce, may be required to contribute to their cost and upkeep. Common carriers for hire, who make the highways their place of business, may properly be charged an extra tax for such use [citing Hendrick *v.* Maryland, Kane *v.* New Jersey, supra]. Compare Packard *v.* Banton, 264 U. S. 140, 144 (44 Sup. Ct. 257, 68 L. ed. 596)." One of the grounds of attack in the case just referred to, it is to be noted, was that not all of the tax was used for the maintenance and repair of the highways; that some of it was used for defraying the expense of the commission in the administration and enforcement of the act, and some for other purposes. The court said: "Since the tax is assessed for a proper purpose and is not objectionable in amount, the use to which the proceeds are put is not a matter which concerns the plaintiffs."

The plaintiff in error relies on Interstate Transit Inc. *v.* Lindsey, 283 U. S. 183 (51 Sup. Ct. 380, 75 L. ed. 953); but it was distinctly ruled in that case that "A detailed examination of the statute under which the tax here challenged was laid makes it clear that the charge was imposed, not as compensation for the use of the highways, but for the privilege of doing the interstate bus business." In the opinion it was said: "While a State may not lay a tax on the privilege of engaging in interstate commerce (Sprout *v.* South Bend, 277 U. S. 163 [48 Sup. Ct. 502, 72 L. ed. 833]), it may impose even upon motor vehicles engaged exclusively in interstate commerce a charge, as compensation for the use of the public highways, which is a fair contribution to the cost of constructing and maintaining them and regulating the traffic thereon [citing Kane *v.* New Jersey, Clark *v.* Poor, Sprout *v.* South Bend, supra]. As such a charge is a direct burden on interstate commerce, the tax can not be sustained unless it appears affirmatively, in some way, that it is levied only as compensation for use of the highways or to defray the expenses of regulating motor traffic. This may be indicated by the nature of the imposition, such as a mileage tax directly proportioned to the use (Interstate Busses Corp. *v.* Blodgett, 276 U. S. 245 [48 Sup. Ct. 230, 72 L. ed. 551]), or by the express allocation of the proceeds of the tax to highway purposes, as in Clark *v.* Poor, supra, or otherwise. Where it is shown that the tax is so imposed, it will

be sustained unless the taxpayer shows that it bears no reasonable relation to the privilege of using the highways or is discriminatory. Hendrick *v.* Maryland, [supra]; Interstate Busses Cor. *v.* Holyoke Street Ry., 273 U. S. 45, 51 [47 Sup. Ct. 298, 71 L. ed. 530]." See also *Aero Mayflower Transit Co.* v. *Georgia Public-Service Com.*, 179 *Ga.* 431 (176 S. E. 487), s. c. 295 U. S. 285, supra.

■ It follows that the maintenance-tax act approved March 30, 1937 (Ga. L. 1937, p. 155), is not violative of article 1, section 1, paragraphs 2 and 3, of the constitution of this State, which declare that "Protection to person and property is the paramount duty of government, and shall be impartial and complete," and "No person shall be deprived of life, liberty, or property, except by due process of law;" or of article 1, section 8, paragraph 3, of the constitution of the United States, which provides that "The Congress shall have power . . to regulate commerce with foreign nations and among the several States and with the Indian tribes;" or of the due-process clause of the 14th amendment of the constitution of the United States, which declares that "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

*Judgment affirmed. All the Justices concur.*