## DIXIE OHIO EXPRESS CO. *v.* STATE REVENUE COMMISSION ET AL.

No. 260.   Argued December 16, 1938.—Decided January 30, 1939.

*Mr. Edgar Watkins,* with whom *Mr. Allan Watkins* was on the brief, for appellant.

*Mr. O. H. Dukes,* with whom *Messrs. M. J. Yeomans,* Attorney General of Georgia, and *B. B. Zellars,* Assistant Attorney General, were on the brief, for appellees.

MR. JUSTICE BUTLER delivered the opinion of the Court.

The question is whether, as applied in this case by the highest court of the State, the Georgia Maintenance Tax Act [1] violates the commerce clause or the equal protection clause of the Fourteenth Amendment of the Constitution of the United States.

Appellant is an Ohio corporation engaged exclusively in interstate transportation as a common carrier of property for hire by motor vehicles, including hauling between points in Georgia and points in other States. A certificate of convenience and necessity issued by the Interstate Commerce Commission authorizing appellant's in-

---

[1] Laws 1937, p. 155.

terstate transportation in Georgia,[2] does not extend to transportation over rural post roads, which are roads not included in the state highway system over which United States mail is carried.[3]

Appellant owns for use in its business about 100 pieces of equipment consisting of trucks and tractors with manufacturer's rated capacity of a ton and a half and two tons and trailers having factory weight of 4,000 pounds. If used to haul not for hire, the tax on each ton-and-a-half motor vehicle is $15; on each two-ton vehicle, $30; and on each trailer, $30. But when used to haul either as a common or contract carrier for hire, the taxes are respectively, $50, $75, and $50. § 3.

For the collection of tax on one of appellant's two-ton trucks, the state revenue commission obtained from the superior court of Fulton County an execution on which it caused the sheriff to levy upon that vehicle. Appellant gave a bond to the sheriff with an affidavit of illegality.[4] In order to avoid seizure of all of appellant's equipment, the state commission allowed it to deposit in escrow the amount claimed under the Act on account of other equipment and agreed that levy should be made only on the one truck. The commission demurred; the superior court sustained the demurrer and dismissed the affidavit. The supreme court affirmed. 186 Ga. 228; 197 S. E. 887.

In addition to the description of appellant's equipment, operations, and use of Georgia highways given above, the statements of the affidavit of illegality, so far as concerns the issues here to be decided, may be summarized as follows:

The Act directs that upon payment of the maintenance tax the director of the motor vehicles division of the state

---

[2] § 206, Motor Carrier Act, 1935, c. 498, 49 Stat. 551; 49 U. S. C. § 306.

[3] Laws 1937, p. 914.

[4] Code 1933, § 92–7301.

commission shall issue a tag (§ 9), and that the money derived from the sale of these tags shall be allocated to the United States rural postal roads division of the Georgia highway department. § 11. Thus, no part of it is applicable to highways over which appellant operates. The maintenance taxes on its equipment for each year will be about $6,000. In addition, the Georgia laws require it to pay $3 for a license tag [5] and $25 for a public service tag [6] for each vehicle and six cents per gallon of gasoline purchased in Georgia; [7] it annually buys in that State about 90,000 gallons. Two-thirds of the gasoline tax is for maintenance of state aid highways.[8] Appellant hauls in seven States; annually its trucks travel an average of 6,870,000 miles of which 725,000, less than 11 per cent of the total, are in Georgia. The 1936 total taxes collected by Georgia amounted to $30,058,092.68, of which motor vehicles bore $19,207,909.59 in license and fuel taxes.

In conclusion, the affidavit asserts that the tax in question is an unreasonable fee for appellant's use of the roads and is therefore repugnant to the commerce clause, and that it discriminates against carriers for hire in favor of carriers not for hire and for that reason violates the equal protection clause of the Fourteenth Amendment.

1. Is the Act repugnant to the commerce clause?

With exceptions not material here, it requires that all who own or have exclusive right to use for more than 30 days a motor bus, truck,[9] or trailer "shall pay a maintenance tax for operation . . . upon and over the public

---

[5] Laws 1935, p. 157.

[6] Code 1933, § 68–623.

[7] Laws 1937, p. 174.

[8] Laws 1937, p. 180.

[9] The Act defines "truck" to "include any self-propelled vehicle designed . . . for drawing other vehicles, but having no provision for carrying loads independently, except what are commonly known as farm tractors." § 2B.

roads of the State" (§ 1) according to a schedule (§ 3) which specifies the amount of the tax òn each vehicle. The Act makes no distinction between vehicles used in intrastate commerce and those used in interstate commerce. It discriminates in favor of equipment used not for hire. It lays upon trucks and tractors taxes graduated according to manufacturer's rated capacities and upon trailers amounts graduated according to factory weights. The tax imposed on appellant is the same as if it operated exclusively in intrastate commerce or carried on both intrastate and interstate transportation.

· It is elementary that a State may not impose a tax on the privilege of engaging in interstate commerce. *Sprout* v. *South Bend*, 277 U. S. 163, 171. *Interstate Transit, Inc.*, v. *Lindsey*, 283 U. S. 183, 185. *Gwin, White & Prince, Inc.* v. *Henneford*, 305 U. S. 434, and cases there cited; also those cited in the concurring opinion. But, consistently with the commerce clause, a State may impose upon vehicles used exclusively for interstate transportation a fair and reasonable tax as compensation for the privilege of using its highways for that purpose. The applicable principle is stated in *Hendrick* v. *Maryland*, 235 U. S. 610. We there said (pp. 623–624): "In view of the many decisions of this court there can be no serious doubt that where a State at its own expense furnishes special facilities for the use of those engaged in commerce, interstate as well as domestic, it may exact compensation therefor. The amount of the charges and the method of collection are primarily for determination by the State itself; and so long as they are reasonable and are fixed according to some uniform, fair and practical standard they constitute no burden on interstate commerce." That rule has been applied in many cases. See e. g. *Kane* v. *New Jersey*, 242 U. S. 160, 168–169. *Clark* v. *Poor*, 274 U. S. 554, 557. *Sprout* v. *South Bend, supra,* 170. *Aero Transit Co.* v. *Georgia Comm'n*, 295 U. S. 285,

289. *Morf* v. *Bingaman*, 298 U. S. 407, 412. While ordinarily state action is deemed valid unless the contrary appears, we have held that to sustain a charge by the State for the use or privilege of using its roads for interstate transportation, it must affirmatively appear that the charge is exacted as compensation or to pay the cost of policing its highways. *Sprout* v. *South Bend, supra. Interstate Transit, Inc.* v. *Lindsey, supra,* 186. *Ingels* v. *Morf,* 300 U. S. 290, 294.

The scope and language of the challenged enactment unmistakably disclose intention of the State to require payment of compensation for the privilege of operating over its roads the specified vehicles for the transportation of property. It contains no hint of hostility to interstate commerce or of purpose to impose a charge on the privilege or business of interstate transportation. The exaction is not to be deemed offensive to the commerce clause merely because the State, in the conduct of its fiscal affairs, chooses to use part or all of the proceeds for purposes other than the construction, improvement, or maintenance of its highways. *Clark* v. *Poor, supra,* 557. *Morf* v. *Bingaman, supra,* 412.

The affidavit of illegality fails to allege any facts tending to show that a reasonable charge for the privilege is less than the amount exacted for it. Appellant does not claim that the privilege to operate for a year 100 pieces of its equipment over any or all the State's roads is not worth $6,000, the amount of the taxes in controversy. It does not disclose what the taxes in question amount to per truck, tractor, or trailer mile, per ton hauled, or per ton mile, nor does it compare the amount of the taxes with total operating expenses or with operating revenues. The figures furnished indicate that the tax imposed on account of the use of each vehicle amounts to about 20 cents a day and that, on appellant's business in 1936, it was about eight mills per vehicle mile. The

amounts paid for license tags, public service tags, and taxes on gasoline ,are without significance in this case. *Interstate Busses Corp.* v. *Blodgett,* 276 U. S. 245, 251–252. The allegation to the effect that in 1936 motor vehicles in Georgia bore, in license and fuel taxes, over 62 per cent of the total taxes collected by the State is too vague for use in any estimate of or study for the ascertainment of the value of appellant's use, or of its privilege to use, the State's roads.

Appellant's failure to disclose whether it fully availed itself of the privilege to use the roads leaves the figures reflecting actual use without foundation and worthless as a measure or indication of the value of that privilege. And, in view of the seemingly low charge for the operation of its vehicles per day or mile, its failure to furnish evidentiary details material to the issue of reasonableness makes against its contention that the challenged exactions so exceed the worth of the granted use of the roads that they are to be deemed taxes on the privilege of carrying on its business of interstate transportation and tends to confirm appellee's claim that they constitute pay for the specified operations over the State's roads.

We find that the challenged enactment does not violate the commerce clause.

2. Is the Act repugnant to the equal protection clause? Appellant insists that it is because of the higher taxes imposed on those who haul for hire. But it fails to show lack of facts sufficient to justify the discrimination. In the absence of proof to the contrary, it is to be assumed that the use of the roads by one hauling not for hire is generally limited to transportation of his own property as an incident to his occupation or business and that it is substantially less than that of one who is engaged in the business of common carrier thereon for hire. As hauling not for hire is likely to be occasional and accessory and as hauling for hire is a business the success

of which depends on the loading of the vehicles used and mileage made by them, the classification complained of may not be held arbitrary or without reasonable foundation. *Morf* v. *Bingaman, supra,* 413. *Aero Transit Co.* v. *Georgia Comm'n, supra,* 290, 291. *Hicklin* v. *Coney,* 290 U. S. 169, 176, 177. *Continental Baking Co.* v. *Woodring,* 286 U. S. 352, 370, 371, *et seq. Bradley* v. *Public Utilities Comm'n,* 289 U. S. 92, 97. *Alward* v. *Johnson,* 282 U. S. 509, 513–514. *Bekins Van Lines* v. *Riley,* 280 U. S. 80, 82. *Packard* v. *Banton,* 264 U. S. 140, 144. Appellant's contention that the Act violates the equal protection clause is without merit.

*Affirmed.*

MR. JUSTICE BLACK concurs in the result.

MR. JUSTICE ROBERTS took no part in the consideration or decision of this case.