GEORGE S. BENNETT TRANSP. CORPORATION *et al. v.* McCANLESS, COMMISSIONER OF FINANCE AND TAXATION, *et al.*

*(Nashville,* December Term, 1939.)

Opinion filed April 6, 1940.

H. W. VINCENT, of Bowling Green, Ky., and M. P. O'CONNOR and R. BOYTE C. HOWELL, JR., both of Nashville, for complainants.

Roy H. Beeler, Attorney-General, and W. F. Barry and Dudley Porter, Jr., Assistant Attorneys-General, for defendants.

Mr. Chief Justice Green delivered the opinion of the Court.

This suit was brought against the Commissioner of Finance and Taxation and others under Section 8835 *et seq.*, of the Code, seeking a declaration that Chapter 183 of the Acts of 1939 was unconstitutional. The defendants interposed a demurrer which was sustained, and the complainants appealed.

Complainants say of themselves that they are engaged in the business of transporting new automobiles from the factory to dealers in various States, including Tennessee and points further south. They drive a new car under its own power, or have it towed by another new car. The service is rendered under contract with a factory or a distributor located in a State other than Tennessee, or with the purchaser of the car. Complainants have no interest in the cars other than to make safe delivery thereof. Each of complainants has a certificate of convenience and necessity granted by the Interstate Commerce Commission, permitting such complainant to engage in the described business in Tennessee and other States, and the business of each complainant in Tennessee is solely and exclusively interstate commerce.

The complainants further allege that they have been required to pay and will be required to pay a fee or imposition provided by Chapter 183 of the Acts of 1939, and they seek a declaration as to the validity of the act accordingly.

Section 1 of the Act of 1939 is as follows:

"That any person, firm, or corporation towing, pulling or in any manner transporting over the highways of this State any motor vehicle designed to operate under its own power, said towing, pulling or transporting being accomplished by means of another motor vehicle, where such motor vehicle being towed, pulled or transported is not equipped with Tennessee license tags, shall be required to obtain a permit from the Commissioner of Finance and Taxation of Tennessee before engaging in such towing, pulling or transporting. The motor vehicle accomplishing the towing, pulling or transporting, together with the motor vehicle being towed, pulled or transported, shall for the purposes of this Act constitute a motor vehicle unit. Upon application for a permit to engage in such towing, pulling or transporting, the Commissioner of Finance and Taxation may, in his discretion, grant such permit upon the payment of a fee of Five ($5.00) Dollars for each motor vehicle unit as defined in the preceding sentence.

"Provided, however, that the provisions of this Act shall apply only to motor vehicles being towed, pulled or transported to a person, firm or corporation for the purpose of sale; and, provided further, that the provisions of this Act shall not apply to carriers transporting one or more vehicles as part of their cargo where the vehicle or vehicles constituting the cargo are not being towed and where such carriers have paid the registration fees and taxes as prescribed by law for such carriers."

Other sections of the act relate to administration of its provisions and matters not important in this investigation, except that Section 3 provides, among other things, that:

"All fees collected under this Act and remaining after payment of the costs of administration of this Act shall

be paid into the state treasury and become a part of the general fund.''

The complainants charge that the statute works an arbitrary and unreasonable discrimination against them and their enterprises, in violation of Section 8 of Article 1 of the Constitution of Tennessee and of the equal protection clause of the Fourteenth Amendment to the Constitution of the United States. They further charge that the statute places an unlawful burden upon interstate commerce in violation of the Constitution of the United States.

In *Hoover Motor Express Co.* v. *Fort,* 167 Tenn., 628, 72 S. W. (2d), 1052, 1054, this Court considered Chapter 35 of the Acts of 1933 regulating the operation of trucks and trailers on the highways of the State. That statute was attacked as transgressing the state and federal constitutions upon grounds similar to the attack here made, and we had occasion to say:

''It seems to us that all the substantial questions raised by the complainants in this case have been considered and determined adversely to complainants' contentions in the decisions of the Supreme Court. Since that Court is the final arbiter of questions such as are herein raised by the complainants, independent discussion of these questions by this court would be of little profit and lack authority. We find it sufficient, therefore, in the disposition of this case, for the most part, to confine the opinion to bare references to the rulings of the Supreme Court of the United States.''

The foregoing observation is entirely applicable to the case before us, and we may dispose of this case in the same manner. It is complained in the bill that the five dollar fee is exacted only of those who tow, pull, or transport by means of a motor vehicle another motor

vehicle designed to operate under its own power, which is being transported for the purpose of sale, and which does not have the Tennessee license tag, and which is not carried as a part of the cargo by carrier that has paid registration fees and taxes prescribed by the laws of Tennessee.

The bill then charges that it is a common practice to haul automobiles from the manufacturing plant to the dealers in different states by placing two or three on another vehicle which may or may not be operated by a common carrier; that it is the common practice to drive or tow farm wagons and farm machinery by motor vehicle over the highways of the state, and that one automobile being towed by another automobile is not more destructive of the roads of the state than a trailer behind a privately or publicly owned and operated automobile.

There is no charge in the bill that anyone makes a business of towing wagons or farm machinery or trailers by a motor driven vehicle. So far as we know, all such towing is by individuals for their private purposes. In *Dixie Ohio Express Co.* v. *State Revenue Commission*, 306 U. S., 72, 59 S. Ct., 435, 438, 83 L. Ed., 495, the Supreme Court said:

"In the absence of proof to the contrary, it is to be assumed that the use of the roads by one hauling not for hire is generally limited to transportation of his own property as an incident to his occupation or business and that it is substantially less than that of one who is engaged in the business of common carrier thereon for hire. As hauling not for hire is likely to be occasional and accessory and as hauling for hire is a business the success of which depends on the loading of the vehicles used and mileage made by them, the classification complained of

may not be held arbitrary or without reasonable foundation."

Again in *Clark* v. *Poor*, 274 U. S., 554, 47 S. Ct., 702, 703, 71 L. Ed., 1199, the Court said:

"Common carriers for hire who make the highways their place of business, may properly be charged an extra tax for such use."

There is no unreasonable discrimination in favor of vehicles which have a Tennessee license tag, or in favor of vehicles operated by carrier which has paid registration fees and taxes prescribed by the laws of the State, Those who operate vehicles of these two classes make a substantial contribution to the expense of the upkeep and of the policing of the highways. In the absence of a statutory provision like the one under consideration, the complainants would make no such contribution.

In *Clark* v. *Paul Gray*, 306 U. S., 583, 59 S. Ct., 744, 751, 83 L. Ed., 1001, after a review of authorities, the Supreme Court said that it was not the province of a court to hear and examine evidence for the purpose of deciding upon the validity of a classification for taxation—that such classification was a legislative function. That the function of the court "is only to determine whether it is possible to say that the legislative decision is without rational basis. This is equally the case where the classification, which is one which the legislature was competent to make, is applied to vehicles using the state highways in interstate commerce."

It results that we find no basis to support the contention that Chapter 183 of the Acts of 1939 violates Section 8 of Article 1 of the State Constitution and the equal protection clause of the Federal Constitution. The principal attack made on the Act of 1939 is that it places an unlawful burden on interstate commerce. We think how-

ever this matter is settled by recent decisions of the Supreme Court.

The complainants rely on *Interstate Transit* v. *Lindsey,* 283 U. S., 183, 51 S. Ct., 380, 75 L. Ed., 953. In that case the legislation held to be a burden on interstate commerce was an item of the general revenue bill, Chapter 89 of the Tennessee Acts of 1927. The purpose of that bill was to provide funds for the conduct of the State's business generally. The tax involved in the case was held to be a privilege tax laid on interstate commerce.

A similar case was *Sprout* v. *South Bend,* 277 U. S., 163, 48 S. Ct., 502, 72 L. Ed., 833, 62 A. L. R., 45, involving an ordinance of the City of South Bend.

The statute and the ordinance held invalid in these cases were not designed merely to exact a fee by way of compensation for the use of the highways and by way of contribution to the expense of policing the same, as is Chapter 183 of the Acts of 1939. The validity of statutes such as the one before us, so far as the commerce clause of the Federal Constitution is concerned, is settled by two recent decisions of the Supreme Court. *Morf* v. *Bingaman,* 298 U. S., 407, 56 S. Ct., 756, 80 L. Ed., 1245, and *Clark* v. *Paul Gray,* 306 U. S., 583, 59 S. Ct., 744, 83 L. Ed., 1001.

The first case dealt with the New Mexico statute, a motor caravan law with provisions quite similar to those of our Act of 1939. Of the New Mexico statute, the Court said [298 U. S., 407, 56 S. Ct., 757, 80 L. Ed., 1245] :

"The statute applies alike to all automobiles transported for sale, whether moving intrastate or interstate. Unlike the general tax in *Interstate Transit, Inc.,* v. *Lindsey* [*supra*], the levy of which was unrelated to the use of the highways, grant of the privilege of their use is by the present statute made conditional upon payment of the

fee. The manner of its collection, not unlike that of a toll for the privilege of entering and using the highways, definitely identifies it as a charge for the privilege. It is not shown to exceed a reasonable charge for the privilege and for defraying the cost of police regulation of the traffic involved, such as a state may impose, if nondiscriminatory, on automobiles moving over its highways interstate.''

After the foregoing, the court proceeded to consider the reasons for legislation of this character, saying that the proof showed that transportation of automobiles across the State in caravans for purposes of sale was a distinct class of business of considerable magnitude, that most of the cars proceeding in such caravan move in units of two, each unit being in charge of a single driver, who operated the forward car, thus controlling the movement of both cars. The proof further showed that most of the drivers were casually employed, often without compensation in order to secure transportation to their points of destination; that the Legislature might reasonably have concluded such drivers had little interest in the business or the vehicles they were driving, and less regard than licensed drivers of State licensed cars for the safety and convenience of others using the highways. Evidence supported the inference that cars thus coupled and controlled frequently skid, especially on curves, causing more than usual wear and tear of the road, and that this and other increased difficulties in the operation of coupled cars and the length of the caravans increased the inconvenience and hazard to passing traffic. So the court thought there was ample support for a legislative determination, that this peculiar character of traffic involved a special type of use of the highways which enhanced wear and tear on the roads and augmented hazards to

other traffic, imposing on the state a heavier financial burden for highway maintenance and policing than did other types of motor car traffic. All the foregoing was followed and approved in the later case of *Clark* v. *Paul Gray, supra.* It may be noted that in the earlier case a five dollar fee was sustained as reasonable. However, in the case before us, there is no charge that the fee exacted by the Act of 1939 is unreasonable.

Under *Morf* v. *Bingaman, supra,* the fact that the net proceeds of this imposition passed into the general fund of the State is not important. In that case, it was said:

"Nor is it important that a part of the fees collected is not devoted directly to highway maintenance, the cost of which the state pays in part from the proceeds of a general property tax. The use for highway maintenance of a fee collected from automobile owners may be of significance, when the point is otherwise in doubt, to show that the fee is in fact laid for that purpose and is thus a charge for the privilege of using the highways. *Interstate Transit, Inc.,* v. *Lindsey, supra.* But where the manner of the levy, like that prescribed by the present statute, definitely identifies it as a fee charged for the grant of the privilege, it is immaterial whether the state places the fees collected in the pocket out of which it pays highway maintenance charges or in some other."

Like observation was made in the later case of *Dixie Ohio Express Co.* v. *State Revenue Commission, supra.*

It was further said in *Morf* v. *Bingaman, supra,* that inasmuch as the tax was not on the use of the highways but on the privilege of using them, without specific limitation as to mileage, "the levy of a flat fee not shown to be unreasonable in amount, rather than of a fee based on mileage, is not a forbidden burden on interstate commerce."

So it seems that all the objections made to Chapter 183 of the Acts of 1939 have been considered in like cases and determined adversely to the contentions of complainants here by the Supreme Court of the United States.

The chancellor therefore committed no error in holding the Act of 1939 valid and constitutional, and his decree must be affirmed.

We are not unmindful that this case is before us on demurrer. However, there is nothing in the bill to negative the existence of facts similar to those proven in *Morf* v. *Bingaman, supra,* and presumably within the knowledge of the Legislature here, justifying the classification of motor caravans for taxation.