

# THE ATTORNEY GENERAL
## OF TEXAS

**AUSTIN 11, TEXAS**

PRICE DANIEL
ATTORNEY GENERAL

August 23, 1948

Overrules O-6529
where conflicts

Honorable Geo. H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Opinion No. V-665

Re: Whether foreign corpora-
tion is liable for Motor
Vehicle Use Tax on buses
purchased out of state and
to be used in Texas only
in interstate commerce.

Dear Mr. Sheppard:

You request our opinion as to whether the Transconti-
nental Bus System, Inc. should pay the Motor Vehicle Use Tax
on ten buses to be used only in interstate commerce. You en-
closed a letter to you from the corporation which reads, in part,
as follows:

"We will have ten buses based in the State of
New Mexico which will operate under interstate
rights from Albuquerque, New Mexico to El Paso
and return to Albuquerque. Interstate passengers
only will be handled and no local passengers will
be taken on the buses or discharged from these
buses at any points between the state line and El
Paso.

"These buses were originally purchased in
the State of Kansas on which Kansas sales tax
and license fees were paid. At the time they were
transferred to New Mexico, New Mexico license
fees were paid. We now propose to license these
buses in the State of Texas and pay the Texas mo-
tor bus license fees; however, we feel that these
buses should be exempted from payment of the Mo-
tor Vehicle Sales and Use Tax due to the fact that
they are to be used exclusively for interstate pur-
poses and no intra-state passengers are to be han-
dled.

"We feel that payment of the Motor Vehicle
Sales and Use Tax would constitute an undue bur-
den on interstate commerce as held in the Opinion
of the Attorney General to Comptroller of Public
Accounts, No. O-6529, April 23, 1945."

We have been advised by the Secretary of State that the Transcontinental Bus System is incorporated under the laws of Delaware and is operating in Texas under a permit to do business in this State. This corporation is engaged, in addition to its interstate business, in intrastate business in Texas and has a business office in Dallas, from which most of its Texas business is conducted.

The pertinent sections of Article 7047k, V.C.S. are as follows:

"Section 1. (a) There is hereby levied a tax upon every retail sale of every motor vehicle sold in this State, such tax to be equal to one (1) per cent of the total consideration paid or to be paid to the seller by the buyer, which consideration shall include the amount paid or to be paid for said motor vehicle and all accessories attached thereto at the time of the sale, whether such consideration be in the nature of cash, credit, or exchange of other property, or a combination of these. In the event the consideration received by the seller includes any tax imposed by the Federal Government, then such Federal tax shall be deducted from such consideration for the purpose of computing the amount of tax levied by this Article upon such retail sale.

" . . .

"Sec. 2. There is hereby levied a use tax upon every motor vehicle purchased at retail sale outside of this State and brought into this State for use upon the public highways thereof by a resident of this State or by firms or corporations domiciled or doing business in this State. Such tax shall be equal to one (1) per cent of the total consideration paid or to be paid for said vehicle at said retail sale. The tax shall be the obligation of and be paid by the person, firm, or corporation operating said motor vehicle upon the public highways of this State.

" . . .

"Sec. 5. The taxes levied in this Article shall be collected by the Assessor and Collector of Taxes of the county in which any such motor vehicle is first registered or first transferred after such a sale; the Tax Collector shall refuse to accept for registration or for transfer any motor vehicle until the tax thereon is paid.

"When a tax becomes due on a motor vehicle purchased outside of this State and brought into this State for use upon the highways, the person, firm, or corporation operating said motor vehicle upon the public highways of this State shall pay the tax imposed by Section 2 to the Tax Collector of the county in which such motor vehicle is to be registered. The tax shall be paid at the time application is made for registration of said motor vehicle, and the Tax Collector shall refuse to issue the registration license until the tax is paid." (Emphasis ours)

Section 2 of the above-quoted article levies a use tax upon every motor vehicle purchased at retail sale outside of this State and brought into this State for use upon the public highways of this State by . . . corporations domiciled or doing business in this State. A corporation, although incorporated by one state, may have a "commercial domicile" in another. See Wheeling Steel Corp. v. Fox, 298 U.S. 193, 56 S.Ct. 773. Even though under the facts the Transcontinental may not have a commercial domicile in Texas, it is doing an intrastate business in Texas and comes clearly within the taxing statute. It will therefore be required to pay the use tax, unless such tax amounts to a regulation of or a burden on interstate commerce. This tax is an excise tax; and if it affects interstate commerce indirectly, incidentally, or remotely, it will be valid unless it actually discriminates against such commerce. Hump Hairpin Mfg. Co. v. Emmerson, 258 U.S. 290, 42 S.Ct. 305. Here we have a tax not directed at or discriminating against interstate commerce. It is not directly imposed upon it or those engaged in it. It only affects such commerce, as any tax will affect it, by adding to the expense of business.

While a state may not directly burden interstate commerce by taxation, it may require all who use her roads to make reasonable compensation therefor. McCarroll v. Dixie Greyhound Lines, Inc., 309 U.S. 176, 60 S.Ct. 504; Hendrick v. Maryland, 235 U.S. 610. By the terms of the statute there is no use tax levied unless the motor vehicle is purchased and brought into this State for use upon the public highways of this State. It is also significant that the use tax must be paid before the Tax Collector is authorized to register the motor vehicle and issue a license for its use upon the highways. Thus it is seen that the payment of this tax is a prerequisite to the use of the motor vehicle upon the highways in that it is unlawful to operate such vehicles upon public highways of this State without registration. In other words, the privilege of operating such motor vehicles upon our highways is conditioned upon the payment of the tax.

It is true that the revenue derived from this tax is not allocated to the use or maintenance of the public highways of this State. We do not believe that the use to which the funds are allocated is controlling. The United States Supreme Court in Dixie Ohio Express Co. v. State Revenue Commission, 306 U.S. 72, 59 S. Ct. 435 in upholding a state tax on motor vehicles engaged in interstate commerce, used the following language:

"The scope and language of the challenged enactment unmistakably disclose intention of the State to require payment of compensation for the privilege of operating over its roads the specified vehicles for the transportation of property. It contains no hint of hostility to interstate commerce or of purpose to impose a charge on the privilege or business of interstate transportation. The exaction is not to be deemed offensive to the commerce clause merely because the State, in the conduct of its fiscal affairs, chooses to use part or all of the proceeds for purposes other than the construction, improvement, or maintenance of its highways. Clark v. Poor, supra, page 557, 47 S. Ct. page 703; Morf v. Bingaman, supra, 412, 56 S. Ct. page 758." (Emphasis added)

The Supreme Court of New Mexico in Geo. E. Breece Lumber Co. v. Mirabal, 287 Pac. 699, in construing a statute which levied an excise tax upon the use of all gasoline and motor fuel used in the State for any purpose, in upholding the tax against a nonhighway user said:

". . . Much effort is made in the argument and brief of counsel for appellees to convince us that this is a special privilege tax upon users of the public roads of the state by means of automobiles in traveling upon such highways. If we understand the argument, it is as follows: The tax is a tax upon the use of the public highways by gasoline propelled vehicles; appellees do not use the public highways in the consumption of gasoline in their operations; therefore, they cannot legally be charged with the tax. If both of appellees' premises were true, their conclusion would inevitably follow. The trouble is with the major premise. In the first place, as we have heretofore assumed, the tax is not laid on the use of the public highways. The statute does not say so, and nowhere in the statute can such a conclusion be drawn. It is true that a large proportion of the gasoline is used in propelling vehicles over the public highways, and it is likewise true that the entire

proceeds of the tax are devoted, by statute, to the payment of such bonds and debentures as may have been issued by the state to secure a fund with which to build and improve the highways of the state. But this has nothing to do with the matter. This is merely a financial arrangement of the state to make sure provision for the prompt payment of its obligations when they become due. . . ." (Emphasis added)

Furthermore, this tax is levied upon the privilege of purchasing at retail a motor vehicle out of the State and bringing it into this State for use upon the highways of this State. The tax is not a charge upon the use of the highways and is due and payable before the vehicle is used in either intra or interstate commerce. The mere fact that the motor vehicle is used subsequent to the incidence of the tax as an instrument of interstate commerce does not make such tax a forbidden burden on interstate commerce. The tax is on a privilege secured before interstate commerce begins. See Nashville C. & St. L. Ry. v. Wallace, 288 U.S. 249, 53 S.Ct. 345. Also see Edelman et al v. Boeing Air Transport, Inc., 289 U.S. 249, 53 S.Ct. 591 wherein the Court said:

"As the statute has been administratively construed and applied, the tax is not levied upon the consumption of gasoline in furnishing motive power for respondent's interstate planes. The tax is applied to the stored gasoline as it is withdrawn from the storage tanks at the airport and placed in the planes. No tax is collected for gasoline consumed in respondent's planes either on coming into the State or on going out. It is at the time of withdrawal alone that 'use' is measured for the purposes of the tax. The stored gasoline is deemed to be 'used' within the State and therefore subject to the tax, when it is withdrawn from the tanks. Compare Nashville, Chattanooga & St. Louis Ry. v. Wallace, 288 U.S. 249; Gregg Dyeing Co. v. Query, 286 U.S. 472; Hart Refineries v. Harmon, 278 U.S. 499; Bowman v. Continental Oil Co., 256 U.S. 642.

"A State may validly tax the 'use' to which gasoline is put in withdrawing it from storage within the State, and placing it in the tanks of the planes, notwithstanding that its ultimate function is to generate motive power for carrying on interstate commerce. Such a tax cannot be distinguished from that considered and upheld in Nashville, Chattanooga &

St. Louis Ry. v. Wallace, supra. There it was pointed out that 'there can be no valid objection to the taxation of the exercise of any right or power incident to . . . ownership of the gasoline, which falls short of a tax directly imposed on its use in interstate commerce, deemed forbidden in Helson v. Kentucky,' 279 U.S. 245. As the exercise of the powers taxed, the storage and withdrawal from storage of the gasoline, was complete before interstate commerce began, it was held that the burden of the tax was too indirect and remote from the function of interstate commerce, to transgress constitutional limitations.. . ."

It is therefore our opinion that the Tax Collector should not register the ten buses in question until the Motor Vehicle Use Tax is paid thereon.

We affirm the holding in Attorney General's Opinion No. 0-6529, written during a prior administration, on the sole ground that the corporation in question in that opinion was neither domiciled in Texas nor doing an intrastate business in Texas. All language used in such opinion that is in conflict with this opinion is hereby expressly overruled.

## SUMMARY

A use tax is due upon motor vehicles, purchased out of Texas by a foreign corporation that is either domiciled in Texas or doing an intrastate business in Texas, if brought into Texas for use upon the highways of this State, even though such motor vehicles will be used only in interstate commerce. Art. 7047k, V.C.S.; Edelman v. Boeing Air Transport, Inc., 289 U.S. 249; 53 S. Ct. 591; Dixie Ohio Express Co. v. State Rev. Com., 306 U.S. 72, 59 S. Ct. 435.

Yours very truly

APPROVED

Price Daniel
ATTORNEY GENERAL

ATTORNEY GENERAL OF TEXAS

By W. V. Geppert
W. V. Geppert
Assistant

WVG/JCP