McLean Trucking Company et al., Plaintiffs, *v.* City of New York et al., Defendants.

Supreme Court, Special Term, New York County, September 30, 1952.

*Harris J. Klein* and *William Biederman* for plaintiffs.

*Denis M. Hurley, Corporation Counsel (Stanley Buchsbaum, Morris L. Heath* and *Anthony Simonelli* of counsel), for defendants.

WALTER, J. Interstate motor carriers here challenge the validity of the New York City motor use tax imposed by Local Law No. 59 of City of New York of 1952, by which title E was inserted in chapter 46 of the Administrative Code of the City of New York, and seek an injunction restraining its enforcement.

One claim is that the tax is not one which the Legislature has authorized the city to impose. A second claim is that the tax violates tax limitations contained in the Vehicle and Traffic Law. A third claim is that the tax is an unconstitutional regulation of or burden upon interstate commerce.

By chapter 278 of the Laws of 1947 cities having a population of one million or more are authorized and empowered to adopt and amend local laws imposing in such city taxes on the use of trucks, buses, and other commercial motor vehicles used principally in connection with a business carried on within the

city, except when owned and used in connection with the operation of a farm by the owner or tenant thereof, at a rate per annum for each such vehicle not in excess of $10. Similar authority is continued by chapter 651 of the Laws of 1948; chapter 589 of the Laws of 1950; chapter 602 of the Laws of 1951, and chapter 742 of the Laws of 1952.

Local Law No. 59 (Administrative Code, ch. 46, tit. E) imposes a tax of $10 on the use of commercial vehicles, the term " use " being defined as meaning any use of a motor vehicle upon the highways or streets of the city, and " commercial vehicles " being defined as meaning any truck, bus, taxi or other motor vehicle, except a noncommercial vehicle, used principally in connection with a business carried on within the city, except when owned and used in connection with the operation of a farm by the owner or tenant thereof.

It thus seems to me patently clear that the tax is precisely the tax the Legislature has authorized; and because of confusions of thought manifested by plaintiffs' counsel in argument I note especially that neither residence nor nonresidence nor the maintenance of an office in the city nor the " doing of business within the city " in the conventional use of that term as illustrated by *Tauza* v. *Susquehanna Coal Co.* (220 N. Y. 259) is determinative of the incidence of the tax. The thing which determines the incidence of the tax is the use of commercial vehicles upon the streets of the city principally in connection with a business carried on within the city. Each plaintiff uses commercial vehicles upon the streets of the city principally in connection with a business carried on within the city, for even assuming that the business of all plaintiffs is purely interstate, they all pick up and deliver merchandise in the city and use the streets of the city for that purpose; and each plaintiff consequently is subject to the tax at least to some extent. The precise extent to which each plaintiff is so subject will be determined by the comptroller hereafter, his determination of course being subject to judicial review.

Plaintiffs' contention that the statute authorizes a tax on the use of motor vehicles while the local law imposes a tax on the use of the highways and streets of the city impresses me as a wholly unsubstantial play upon words. The tax authorized, as well as the tax imposed, is a tax on the use of motor vehicles on the streets and highways of the city and are one and the same thing. The tax consequently is one which the Legislature has authorized the city to impose.

The Vehicle and Traffic Law provides that the registration fees which it imposes upon motor vehicles, other than those of manufacturers and dealers, shall be in lieu of all taxes, general or local, to which motor vehicles may be subject (§ 11, subd. 11); that except as otherwise provided therein local authorities shall have no power to pass, enforce, or maintain any ordinance, rule or regulation requiring from any owner of a motor vehicle to whom the chapter is applicable any tax, fee, license or permit for the use of the public highways (§ 54); and that except as therein otherwise provided it shall be exclusively controlling upon the registration, numbering and regulation of motor vehicles and their use of the public highways (§ 10).

I assume *arguendo* that if those provisions of the Vehicle and Traffic Law were unaffected by other legislation, they would prohibit the tax here involved (*People* v. *County of Westchester,* 282 N. Y. 224; *United Taxicab Bd. of Trade* v. *City of New York,* 150 Misc. 636; *Great Atlantic & Pacific Tea Co.* v. *City of New York,* 173 Misc. 470); but it seems to me clear beyond the possibility of doubt or question that those provisions are so modified by chapter 278 of the Laws of 1947 that they no longer can be given the effect of prohibiting the tax here imposed. The legislative command there is, section 3: " Notwithstanding any other provision of law to the contrary, any city of the state having a population of one million or more is hereby authorized and empowered " to impose taxes of the kind here involved. That plainly limits, and to that extent supersedes, the contrary provision in the Vehicle and Traffic Law.

It is true that there have been amendments of the Vehicle and Traffic Law subsequent to the enactment of chapter 278 of the Laws of 1947 (see L. 1948, ch. 665; L. 1949, chs. 428, 711; L. 1950, chs. 228, 554, and L. 1951, ch. 314). There is nothing in those amendments, however, which wipes out the effect of chapter 278 of the Laws of 1947 as modifying the prohibition of local taxes to the extent authorized by chapter 278 of the Laws of 1947.

Even if the 1951 amendment of the Vehicle and Traffic Law were the latest legislative expression, and even if that amendment could be regarded as a reiteration, as of its date, of the general prohibition against local taxes, the effect still would be that the specific and particular authorization of local taxes contained in chapter 278 of the Laws of 1947 would have to be given effect in preference to the general prohibition thereof in the Vehicle and Traffic Law, upon the familiar principle that the particular prevails over the general (see *East End Trust Co.* v. *Otten,* 255 N. Y. 283; *People ex rel. Leet* v. *Keller,* 157 N. Y.

90; *Strauch* v. *Town of Oyster Bay,* 263 App. Div. 833; *Williamsburg Power Plant Corp.* v. *City of New York,* 255 App. Div. 214, affd. 280 N. Y. 551; *Robia Holding Corp.* v. *Walker,* 257 N. Y. 431; *Bogart* v. *County of Westchester,* 185 Misc. 561, 569, affd. 270 App. Div. 274, appeal dismissed 296 N. Y. 701).

In fact, however, the authorization of the local taxes is reiterated in chapter 742 of the Laws of 1952 and that authorization is the latest legislative expression, and as such it clearly is controlling. The tax consequently cannot be condemned as violating the Vehicle and Traffic Law.

Carrying on interstate commerce is a right under the Constitution and laws of the United States, not a franchise or privilege granted by the State (*Crutcher* v. *Kentucky,* 141 U. S. 47, 57; *Western Union Tel. Co.* v. *Kansas,* 216 U. S. 1), and a State may not exact a license as a prerequisite to the carrying on of such business (*Crutcher* v. *Kentucky, supra; Adams Express Co.* v. *New York,* 232 U. S. 14; *Sprout* v. *South Bend,* 277 U. S. 163; *People* v. *Horton Motor Lines,* 281 N. Y. 196, 203), or impose a tax on the privilege of engaging in such commerce (*Sprout* v. *South Bend, supra; Interstate Transit, Inc.,* v. *Lindsey,* 283 U. S. 183; *Dixie Ohio Co.* v. *Commission,* 306 U. S. 72, 76), or require that a foreign corporation qualify to do business in the State as a condition of its right to sue in its courts for the enforcement of contracts made in interstate commerce (*International Text Book Co.* v. *Pigg,* 217 U. S. 91; *Sioux Remedy Co.* v. *Cope,* 235 U. S. 197; *International Text Book Co.* v. *Lynch,* 218 U. S. 664; *International Text Book Co.* v. *Tone,* 220 N. Y. 313). A State may not even exact payment of a lawfully imposed tax as a condition of the continuance of interstate business within its borders (*Western Union Tel. Co.* v. *Massachusetts,* 125 U. S. 530, 553, 554; *St. Louis S. W. Ry.* v. *Arkansas,* 235 U. S. 350, 368).

In brief, a State may not in any fashion impose a *direct burden* upon interstate commerce (*Minnesota Rate Cases,* 230 U. S. 352, 396–401).

But none of that means that persons engaging in interstate commerce are entirely free from State regulation. On the contrary, there is an exceedingly broad field, embracing all subjects of really local concern, as to which the States may and always have and do legislate, even though interstate commerce is thereby affected and regulated, and in that field State legislation, if not discriminatory or unreasonably burdensome, is valid and effective unless and until Congress legislates upon the same subject in such a way as to displace the State regulations,

so that it may be said, at least in general, that persons engaging in interstate commerce are subject to and bound by all local laws which, although affecting interstate commerce, do not in fact unreasonably burden it (*Minnesota Rate Cases, supra,* pp. 402–412; *Western Union Tel. Co.* v. *Kansas,* 216 U. S. 1, 26, *supra*).

In particular, it is recognized that, in the absence of national legislation covering the subject, a State may prescribe regulations necessary for public safety and order in respect of the operation of motor vehicles upon its highways, including those moving in interstate commerce (*Hendrick* v. *Maryland,* 235 U. S. 610, 622), and it is now authoritatively settled that a State may impose, and may authorize its municipalities to impose, a tax upon interstate motor carriers for their use of its highways (*Kane* v. *New Jersey,* 242 U. S. 160; *Clark* v. *Poor,* 274 U. S. 554, 557; *Interstate Busses Corp.* v. *Blodgett,* 276 U. S. 245; *Hicklin* v. *Coney,* 290 U. S. 169; *Aero Transit Co.* v. *Georgia Comm.,* 295 U. S. 285; *Morf* v. *Bingaman,* 298 U. S. 407; *Dixie Ohio Co.* v. *Commission,* 306 U. S. 72, *supra; Clark* v. *Paul Gray, Inc.,* 306 U. S. 583; *Aero Transit Co.* v. *Commissioners,* 332 U. S. 495; *Mid-States Freight Lines* v. *Bates,* 279 App. Div. 451, affd. 304 N. Y. 700).

The tax may be on an annual or semi-annual basis as well as on a mileage basis and need not be limited to the cost of inspection and regulation (*Kane* v. *New Jersey, supra*). It is not essential that the proceeds of the tax be applied directly or exclusively to highway purposes (*Clark* v. *Poor, supra; Morf* v. *Bingaman, supra,* p. 412; *Aero Transit Co.* v. *Commission,* 332 U. S. 495, *supra; Dixie Ohio Co.* v. *Commission,* 306 U. S. 72, 77, *supra*), or even that any part of the proceeds be applied to the particular highways used by those subjected to the tax (*Dixie Ohio Co.* v. *Commission, supra,* p. 75). Neither is the tax invalidated by the fact that it is in addition to other taxes paid by the interstate carrier (*Interstate Busses Corp.* v. *Blodgett, supra*). It must appear that the tax is exacted as compensation for the use or the privilege of using the highways, but the statute itself may make the requisite showing in that respect (*Dixie Ohio Co.* v. *Commission, supra*). If the reasonableness of the tax be questioned, the burden is upon those challenging its validity to establish the unreasonableness by proof (*Clark* v. *Paul Gray, Inc., supra; Capitol Greyhound Lines* v. *Brice,* 339 U. S. 542, 548).

The result of all the cases thus is that so far as interstate commerce is concerned the validity of this tax depends upon

whether it is a tax on the privilege of engaging in interstate commerce or a tax on the use of streets or highways in the State or city. If the former, it is invalid. If the latter, it is valid unless shown to be discriminatory or unreasonably burdensome.

I think it entirely clear that the tax is a tax on the use of the streets of the city. It does not in any way discriminate against interstate commerce, and there is no evidence that it constitutes an unreasonable burden upon interstate commerce.

Plaintiffs suggest, rather than argue, that under chapter 278 of the Laws of 1947, a large number of counties and cities may impose taxes of the kind there authorized and that the aggregate of all such taxes may be an unreasonable burden upon interstate commerce. That, however, presents no question now judicially cognizable. Perhaps no other county or city ever will impose similar taxes. If and when they do, the question of the reasonableness of all the taxes in the aggregate can be dealt with, but not before.

During the course of the trial plaintiffs' counsel attempted to urge that the city comptroller has promulgated regulations under which the tax will be unequally and unfairly administered in such a way that unjust and unlawful discriminations will be made between persons in the same class.

There of course is no doubt that a violation of the constitutional guaranty of the equal protection of the laws can be brought about by an unequal and discriminatory administration of a statute which is fair and legal on its face as well as by a statute which is discriminatory upon its face (*Poindexter* v. *Greenhow,* 114 U. S. 270, 295, 296; *Yick Wo* v. *Hopkins,* 118 U. S. 356, 373, 374; *United States* v. *Reynolds,* 235 U. S. 133, 148, 149; *Myles Salt Co.* v. *Iberia Drainage Dist.,* 239 U. S. 478, 484; *Detroit United Ry.* v. *Michigan,* 242 U. S. 238, 247) ; but there is nothing in the complaint in this action which charges a discrimination of either sort. When that fact was called to counsel's attention, a motion was made for leave to amend. The proposed amendment, in my opinion, was palpably insufficient to present any intelligible issue of fact on that point, and it was also entirely clear from statements then made by counsel on both sides that thus far at least the discrimination, if any, is purely on paper in the form of regulations and does not yet exist in actual practice, and that up to date it is quite impossible to have a fair hearing on the question of discrimination in administration. Instead, therefore, of allowing the amendment and then rejecting the claim of discrimination as unproved in

point of fact, I concluded that justice would be best served by refusing the amendment. That, it seems to me, leaves the question entirely open so that it may be raised in the future, after actual administration takes place, without fear of any claim by anyone that the issue has been adjudicated in this case.

The complaint contains an allegation that the local law permits the comptroller to make rules and regulations and hence is an unlawful delegation of legislative power. Inasmuch, however, as the power is limited to the now familiar authority to make rules and regulations appropriate to the carrying out of the law and the purposes thereof, it is too clear for argument that that is not an unlawful delegation of legislative power.

The complaint must be dismissed, with costs. I direct the entry of judgment accordingly.

The foregoing constitutes the decision required by the Civil Practice Act and judgment is to be entered thereon.